El Pueblo de Puerto Rico, demandante y apelado, *v.* Tomás Pereira, acusado y apelante.

No. 6008.—*Sometido:* Marzo 17, 1936. *Resuelto:* Mayo 7, 1936.

R. *Rivera Zayas,* abogado del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Allá por el 3 de junio de 1934, por la noche, Justo Machuca y su hijo Julián caminaban a pie de Santurce para Río Piedras, Justo detrás de Julián, a muy corta distancia uno del otro, por la orilla de la Avenida Ponce de León, muy pegados a la cuneta. Al llegar a la parada 27½, Hato Rey, un automóvil que pasaba en dirección de San Juan a Río Piedras arrolló a Justo Machuca, ocasionándole lesiones que le produjeron la muerte.

Se acusó a Tomás Pereira de un delito de homicidio involuntario. En la acusación se alega que el referido Pereira guiaba el automóvil descuidada y negligentemente, sin guardar la debida prudencia y circunspección. El jurado rindió un veredicto de culpabilidad y el acusado fué condenado a sufrir cuatro meses de cárcel. Se alega que hubo manifiesto error en la apreciación de la prueba y que no existe prueba en absoluto para sostener que el acusado fuera el conductor del vehículo que ocasionó el accidente ni que estuviera en forma alguna conectado con dicho accidente.

Sobre este último extremo declararon dos testigos: Juan J. Parsi y Francisco Beltrán. La defensa sostiene que el testimonio de los mismos no es bastante para conectar a Tomás Pereira con el accidente ocurrido.

El testigo Juan J. Parsi se expresó así:

"El tres de junio del año pasado entre siete y cuarto y siete y media de la noche salí de casa en la parada 27; entre Hato Rey para Santurce, frente a la White Star Line más o menos me crucé con un automóvil que venía en dirección a Río Piedras y traía las luces altas prend'das y como me molestaba para manejar, le subí las mías y cuando le cruzamos sentí un golpe; paré mi carro a la derecha y me bajé del automóvil, como había muchísima gente que había corrido hacia la cuneta y en la cuneta ví dos individuos. Y como pude apreciar que fué el automóvil que se cruzaba conmigo el que había dado, pregunté: '¿Qué se hizo el automóvil?' Y me dijeron: 'Siguió'. Y seguí detrás de él y estaban parados frente a mi casa y detrás del automóvil estaban parados dos individuos y le dije al más alto: 'Estropearon un hombre allá abajo, ¿por qué no lo van a recoger?' Y me d'jo: 'Yo no fuí, fueron estos otros y precisamente les estoy diciendo que lo vayan a recoger'; y me dijo: 'Que lo recojan ellos.' Seguí hasta la estación de Hato Rey, era la huelga y con motivo de la huelga había un guardia y el guardia tuvo que llamar a Río Piedras para pedir permiso y cuando consiguió el permiso fué hasta frente a mi casa en mi automóvil y ya el automóvil se había ido, seguimos hasta el sitio de los hechos y ya se habían llevado al hombre para el hospital."

Manifiesta además el testigo que no conoció de momento a los dos individuos que vió detrás del automóvil, que después supo que era un muchacho de apellido Torrens y que inmediatamente detrás de Torrens se encontraba el acusado; que Torrens manifestó que él no había sido, pero que señalando hacia atrás decía que fueron ellos.

El detective Francisco Beltrán declaró que sus superiores le encomendaron esclareciera los hechos del accidente a que se hace referencia en la denuncia. Manifestó que se dirigió al pueblo de Caguas, a casa del acusado, y le hizo saber que había cometido un delito grave (*felony*) y que entonces el acusado le dijo que verdaderamente él había sido el autor del hecho el día 3 de junio de 7 a 7:30 de la noche, en el momento en que se dirigía en el automóvil 8276, marca "Chrysler", en unión de otro compañero, de Isla Verde a Caguas; que el acusado le manifestó que después del accidente siguió y a cierta distancia paró el carro; que entonces

volvieron hacia atrás donde había ocurrido el accidente, pero al llegar allí ya se habían llevado el herido; que entonces, temiendo que hubiera algún familiar o alguna persona interesada que pudiera agredirlo, siguió rumbo a Caguas. En el contrainterrogatorio declara el testigo que todas las manifestaciones las hizo el acusado en presencia de Parsi, en la misma casa del acusado.

Parsi dice que vió a Pereira en Caguas, frente a su casa, en los momentos en que se levantaba, añadiendo que el acusado declaró en el cuartel, pero que no lo hizo en su presencia. A juicio de la defensa, siendo Beltrán el único testigo que trata de conectar al acusado con el accidente, y habiendo sido desmentido por la declaración de Parsi, la sentencia apelada debe ser revocada, por no existir prueba suficiente que conecte a Pereira con el accidente ocurrido. Añade la defensa que hay una circunstancia que debe ponernos en guardia contra la veracidad de la declaración de Beltrán, y es que la forma y las palabras de la admisión que se le atribuye al acusado responde a la técnica policíaca o procesal, incluyendo todos los requisitos que debe tener una admisión a fin de que sea suficiente para probar el punto de que se trata. No estamos discutiendo en este caso la veracidad de los testigos, por ser ésta una circunstancia que toca apreciar exclusivamente al jurado. Beltrán declaró que Pereira le confesó que había sido la persona que ocasionó el accidente, en presencia de Parsi. Éste manifestó que el acusado declaró en el cuartel, pero que no lo hizo en su presencia. El jurado, que vió y oyó declarar a ambos testigos, rindió un veredicto de culpabilidad, y nosotros no estaríamos justificados en revocar la sentencia apelada, basándonos exclusivamente en una cuestión que se reduce a una mera apreciación de la prueba.

■■ Se demostró por la prueba que el acusado no tenía licencia para manejar vehículos de motor. La defensa, basándose en *Maldonado* v. *Hamilton*, 32 D.P.R. 224, sostiene que la falta de licencia no es por sí sola bastante para demostrar descuido y negligencia criminales en el manejo de

un automóvil que ocasiona un accidente a menos que la falta de dicha licencia tuviere alguna relación causal con el accidente. En el caso citado se dice que ''el concensus de opiniones en la jurisprudencia parece establecer el principio de que la operación de un automóvil sin licencia en violación del estatuto se considera prueba prima facie de negligencia, pero que si de un accidente resultan daños, debe aparecer una relación de causa y efecto entre la violación de la ley en tal respecto y el daño causado.''

Las últimas decisiones sostienen, de acuerdo con la mayoría de las autoridades, que el hecho de que un vehículo de motor no haya sido registrado o de que su conductor carezca de la licencia requerida por la ley, no implica responsabilidad de parte del dueño o del conductor cuando la omisión de inscribir el vehículo u obtener licencia para manejarlo no tiene conexión causal con la lesión o el daño causado. Véanse las anotaciones que aparecen en los tomos 73 y 87, A.L.R., páginas 165 y 1473, respectivamente. Ésta es la jurisprudencia que se aplica en casos civiles. Opinamos que en un caso de homicidio como el presente, el Fiscal, que tiene el deber de probar los hechos alegados, debe acreditar mediante la evidencia correspondiente la conexión causal entre la violación de la ley y el accidente que ocasionó la muerte.

▆ El fiscal, a petición de la defensa, consignó en un pliego de especificaciones los actos de negligencia en que a su juicio incurriera el acusado. Se alega en este pliego de especificaciones que el acusado guiaba el automóvil sin licencia, que se hallaba en estado de embriaguez, que no desplegó luces blancas al frente de dicho vehículo, que no tocó bocina, y que caminaba a una velocidad exagerada, mayor de 24 y 48 kilómetros por hora.

No hubo prueba alguna acerca de que el acusado se encontrase embriagado. En cuanto a la falta de luces blancas enfrente del automóvil, el testigo Julián Machuca, hijo del interfecto, declaró que las luces venían apagadas. Parsi

declara que el automóvil traía las luces altas prendidas y como le molestaban para manejar, subió las de su carro y que entonces el *chauffeur* del otro carro apagó todas las luces y le puso las chiquitas; que esto lo hizo un poco antes de cruzar con él. Esta declaración demuestra que el carro que ocasionó el accidente tenía las luces prendidas, habiendo apagado algunas y dejado prendidas las pequeñas momentos antes de cruzarse con el carro guiado por Parsi. Julián Machuca, quien se dirigía a Río Piedras, caminaba en la misma dirección y a espaldas del automóvil que ocasionó el accidente.

También se alega que el carro no tocó bocina. Sobre este extremo declaró Julián Machuca en sentido negativo, respondiendo a preguntas del fiscal. El testigo de la acusación Antonio Maldonado dice que cuando ocurrió el accidente había bastante tráfico de automóviles y guaguas en la carretera. El testigo de la defensa, Ladislao Santos, declara que oyó *klaxon*, pero no sabe quién lo tocó. Ramón de Jesús dice que pasaron muchos carros y se oían *klaxons,* pero no puede decir tampoco si era uno de esos carros. Ésta es la única prueba que aparece en los autos sobre este particular.

La alegación de que el automóvil caminaba a una velocidad mayor de 24 y 48 kilómetros por hora se basa en el artículo 13, inciso *a,* de la Ley núm. 75 de 1916 (pág. 144), que dice así:

"La velocidad de un vehículo de motor deberá en todo tiempo regularse con el debido cuidado, tomando en cuenta el ancho, tráfico y uso del camino; y el hecho de conducir, en cualquier tiempo, un vehículo de motor por un camino público a una velocidad que exceda de 48 kilómetros por hora, o dentro de la zona urbana de un municipio, a una velocidad mayor de 24 kilómetros por hora, constituirá evidencia prima facie de que el vehículo era conducido sin el debido cuidado."

Como hemos visto, el accidente ocurrió en la carretera pública, en un sitio donde había bastante tráfico. Julián Machuca declara que el carro iba por el aire, porque no iba

por la carretera. Para ser más exactos, vamos a permitirnos transcribir sus propias palabras: "Ese carro iba por el aire, porque no iba por la carretera, y uno cayó muerto, él, y yo grave. . . . El carro venía casi por el aire, no venía andando por tierra, venía andando por el aire el carro ese. . . . Mi papá cayó grave con el cráneo muy agolpeado, 'to' tajeado por aquí y un brazo roto y una pierna rota también. . . . Nosotros caímos en la cuneta, íbamos por la orilla de la cuneta casi." Añade el testigo que le dijo a su papá: "Ave María, papá, ahí viene un carro y si no nos quitamos nos va a llevar." Antonio Maldonado dice que el automóvil iba bastante ligero. El testigo de la defensa, Ladislao Santos, declaró que el automóvil que pasaba cuando sintió el golpe caminaba a una velocidad de quince o veinte millas.

Ésta fué la prueba que tuvo bajo su consideración el jurado relacionada con la velocidad del vehículo que ocasionó el accidente. El jurado, que oyó declarar a los testigos y que pudo penetrarse de todas las circunstancias del caso, consideró esta prueba suficiente y rindió un veredicto de culpabilidad.

Podrá argüirse que este testimonio así producido adolece de vaguedad y falta de precisión. Ésta es la prueba, sin embargo, que puede producirse en muchos casos de responsabilidad criminal en que los testigos, que no son peritos, no saben de otro modo apreciar la velocidad.

En el caso de *Bowen* v. *State*, 140 S. W. 29, la Corte Suprema de Arkansas dijo lo siguiente:

"Con la objeción del apelante la corte permitió a un testigo declarar como sigue, respondiendo a una pregunta de si el automóvil iba ligero o no: 'Yo le dije a este amigo Vaughan: "¡Cielos, fíjese como esa cosa va! (Gee, look at that thing go.)"'" También se permitió al testigo declarar que a su juicio la máquina caminaba a una velocidad de 30 millas por hora. Otro testigo, con la oposición del apelante, declaró respondiendo a una pregunta de si el automóvil iba a un grado de velocidad desusado como sigue: 'A una velocidad desusada.' Respondiendo a una pregunta de cuál era la conducta del acusado, dijo además el testigo: 'Personalmente hablando, yo no

creo que actuaría de una manera tan descuidada como él lo hizo en este caso.' Otros testigos, con la oposición del apelante, respondiendo a la pregunta de si el automóvil iba a un grado de velocidad desusado, manifestaron que creían que sí, añadiendo que la velocidad era desusada. El apelante alega que este testimonio no es competente, por la razón de que los testigos no demostraron que tuviesen conocimiento del grado usual de velocidad de un automóvil o que su experiencia los capacitase para apreciar tal grado de velocidad.

"La muerte ocurrió en las calles de Little Rock por donde pasan automóviles constantemente. La transportación por automóviles puede ser considerada como una cuestión de conocimiento común y de información general. No se necesita el conocimiento de un perito para determinar si un automóvil está caminando a un grado usual o desusado de velocidad. Cualquier persona de entendimiento ordinario y observación común es competente para emitir su juicio sobre esta cuestión. En el caso de Railway Co. v. Thomason, 59, Ark. 143, 26 S.W. 598, esta corte dijo: 'El testigo estaba testificando con respecto a materias de hecho que él dice había observado y acerca de las cuales los hombres de entendimiento común pueden ser informados mediante observación. Cualquier persona que tenga conocimiento de los hechos sobre los cuales basa su juicio, puede dar su opinión en cuestiones de identidad, tamaño, peso, distancia, y tiempo. Tales cuestiones son accesibles a todos los hombres de ordinaria información.' Además: 'Nada podemos ver nosotros en la distancia o esfera de reflexión de la luz de una máquina que exija el ejercicio de cuidado especial, la posesión de conocimiento profesional o que requiera cualquier hábito peculiar de estudio con el fin de capacitar a una persona para entenderla y testificar acerca de ello inteligentemente.' Lo mismo puede decirse con respecto a la velocidad de un automóvil. (Citas.)

"En State v. Watson, 216 Mo. 420, 115 S.W. 1011, hubo una convicción de homicidio donde se formuló una imputación similar a la que ahora consideramos. Varios testigos, que vieron caminar el automóvil, declararon que el acusado manejó el vehículo a un alto grado de velocidad. El acusado en aquel caso se opuso al testimonio alegando que constituía error permitir a testigos que no sabían nada acerca del modo de operar automóviles dar su opinión con respecto al grado de velocidad que llevaba el automóvil guiado por el acusado antes de que el interfecto fuese golpeado. La corte en aquel caso dijo: 'El grado de velocidad a que un automóvil corre no es una cuestión exclusivamente para el testimonio de peritos. Si así fuese, entonces como se ha dicho por esta corte, sería imposible para aquellas

personas arrolladas por los vehículos, ya se trate de automóviles, carros eléctricos o carros de ferrocarril, tener siempre expertos a su disposición para demostrar el grado de velocidad de esos vehículos. Una conclusión de esta naturaleza sería.completamente impracticable y constituiría una gran injusticia para muchas personas que han sido lesionadas negligentemente por vehículos del carácter indicado corriendo a un grado excesivo de velocidad. .La única·solución razonable de esta cuestión es· sostener que el testigo que por lo menos sabe lo que es un automóvil y ha visto cómo se manejan, puede dar opiniones con respecto al grado de velocidad. En cuanto al peso que tales opiniones deben merecer, es una cuestión que pertenece completamente al jurado.' (Citas.)''

Como hemos visto, un testigo declara que el automóvil más bien que por la carretera caminaba por el aire, haciendo uso de esta expresión para demostrar un grado excesivo de velocidad. Otro nos dice que el carro caminaba bastante ligero, y el último, que es un testigo de la defensa, manifiesta que la velocidad era de quince o veinte millas.

El peso de esta prueba es una cuestión de la incumbencia exclusiva del jurado, cuyo juicio debemos respetar. Si el jurado creyó el testimonio del testigo Julián Machuca y, teniendo en cuenta todas las circunstancias del caso, consideró al acusado culpable de negligencia criminal, nosotros no nos sentimos autorizados para intervenir, dejando sin efecto su veredicto.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Travieso no intervino.