EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TULIO LÓPEZ LAFONT, acusado y apelante.

Número 15373.

*Sometido:* 5 de mayo de 1953. *Resuelto:* 15 de diciembre de 1954.

608

*Charles H. Juliá* e *Ismael Soldevila*, abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

El apelante fué procesado en el antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan, por un delito de homicidio involuntario, cometido según la acusación, al arrollar y dar muerte a Pablo Figueroa Sierra, con un automóvil

que conducía descuidada y negligentemente.(¹)   El jurado que le juzgó rindió veredicto de culpabilidad, siendo sentenciado a sufrir seis meses de cárcel y al pago de una multa. Apeló, y nos pide que revoquemos la sentencia, sosteniendo que dicho tribunal incurrió en varios errores que señala.

En el primer señalamiento impugna el veredicto por ser contrario a la prueba, contención con la que no podemos estar de acuerdo.   Fúndase ella en que la presentada por el ministerio público fué contradictoria en cuanto se refiere a la velocidad a que era conducido el vehículo, a la forma en que ocurrió el accidente, y a si éste fué ocasionado por el apelante, o por el conductor de otro automóvil.

Es perfectamente cierto que hubo conflicto sobre esos extremos en la evidencia sometida por El Pueblo, y que también lo hubo, y muy marcado, entre aquélla y la que fuera ofrecida por el apelante con el propósito de demostrar que no tuvo participación en el accidente, estando exento de toda responsabilidad.   Sin embargo, correspondía al jurado el apreciarla, dirimiendo tales conflictos, *Pueblo* v. *Cabrera*, 59 D.P.R. 135; *Pueblo* v. *Betancourt*, 66 D.P.R. 132; *Pueblo* v. *Rodríguez*, 70 D.P.R. 23, lo que sin duda hizo para rendir el veredicto, que a nuestro juicio está sostenido por la prueba.

Se presentó suficiente evidencia tendiente a demostrar que a las seis y cuarenticinco de la tarde del día 20 de octubre de 1951 el apelante manejaba un automóvil por la carretera núm. 1 en dirección de Caguas a Río Piedras, que es de concreto con cuatro carriles, divididos por una franja de grama que está al centro de la misma, dos de los cuales se usan para ir en dirección al primero de los pueblos mencionados y dos

---

(¹) El art. 203 del Código Penal, lee así:

"Homicidio, Definición.   Homicidio es dar muerte ilegal a un ser humano sin que medie malicia.   Es de dos clases:

"1. Voluntario.   Voluntario: Cuando ocurre con ocasión de una súbita pendencia o arrebato de cólera.

"2. Involuntario.   Involuntario: Cuando ocurre al realizarse un acto ilegal, que no constituyere delito grave (*felony*); o al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia o circunspección."

para ir hacia el segundo; que el vehículo era conducido a velocidad exagerada, dejando el apelante que se saliera de dicha carretera, para penetrar rápidamente en la grama que está a la derecha y fuera de la misma, en dirección a Río Piedras, grama por donde transitaba el joven Pablo Figueroa Sierra, acompañado de otro niño; que arrolló y mató al primero de ellos en ese sitio, levantándolo en alto como consecuencia del impacto, y recorriendo alrededor de treinta metros por una zanja que bordea dicha grama, llevándole enganchado en la parte delantera del automóvil durante parte de ese trayecto; que volvió el apelante a entrar en la carretera, cruzó los dos carriles que se usan para ir hacia Río Piedras, así como la franja de grama que está en el centro de la misma, pasó a los que se utilizan para ir hacia Caguas, situándose así en dirección contraria a la que llevaba originalmente, volviendo a cruzar la grama del centro para colocarse de nuevo en uno de los carriles en dirección a Río Piedras, hacia donde continuó a alta velocidad, sin haberse detenido en el sitio del accidente.

En el segundo señalamiento de error se ataca el veredicto por ser contrario a derecho. La contención del apelante es que para que pueda tener éxito una acusación por homicidio involuntario "es indispensable que la prueba establezca que hubo por parte del acusado negligencia o descuido de tal grado que equivalga a negligencia temeraria", y que ésta sea la causa próxima de la muerte. Sostiene que no se probó en el caso de autos que el accidente se debiera a negligencia de esa clase, porque "la única imputación hecha al acusado es la de manejar el vehículo a velocidad excesiva", lo que "solamente constituye prueba *prima facie*" de negligencia.

En algunas de nuestras decisiones expresamos el criterio de que para obtener una convicción por homicidio involuntario, El Pueblo viene obligado a demostrar que la muerte fué causada por negligencia criminal, citando con aprobación precedentes de otros tribunales en los que aquélla se describe como crasa o temeraria. Véase, *Pueblo* v. *Rodríguez*, 47

D.P.R. 600. Reiteramos que el Ministerio Público debe probar que hubo negligencia de naturaleza criminosa, puesto que el art. 11 del Código Penal dispone que "En todo delito o delincuencia pública deberá existir unión o simultaneidad entre el acto y la intención o negligencia criminal", (²) pero hemos llegado a la conclusión de que no hay que recurrir a esos vocablos para explicarla, cuando la modalidad del homicidio involuntario bajo la cual somete el tribunal la causa a la consideración del jurado, como sucedió en este caso, es aquélla en que se incurre cuando se causa la muerte *"al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia o circunspección".* Ello es así, porque en las disposiciones del art. 203 del Código Penal que hemos subrayado, encontramos la definición de dicha modalidad y de la negligencia que se requiere para condenar, siendo por esa razón improcedente e innecesario calificarla de crasa o temeraria, introduciendo en la definición del delito conceptos distintos a los adoptados por el poder legislativo. *People* v. *Seiber,* 207 Pac. 396 (Cal.) ; *People* v. *Anderson,* 208 Pac. 324 (Cal.) ; *People* v. *Wilson,* 226 Pac. 5 (Cal.) ; *People* v. *Crossan,* 261 Pac. 531 (Cal.) ; *State* v. *Brooks,* 288 Pac. 894 (Idaho) ; *People* v. *Marconi,* 5 P.2d 974 (Cal.) ; *People* v. *Pociask,* 96 P.2d 788 (Cal.) ; *State* v. *Salhus,* 189 P.2d 372 (Idaho) ; *People* v. *Freudenberg,* 263 P.2d 875 (Cal.). La característica distintiva de la susodicha modalidad es la de que el acto *pudiere ocasionar muerte,* esto es, *que tenga potencialidades conocibles y aparentes para causarla.* Cuando se ejecuta un acto legal de esas potencialidades en forma ilegal, o sin las precauciones que, dado el carácter peligroso del acto, deberían esperarse de una persona de ordinaria prudencia, y como consecuencia de ello se causa la muerte, el autor comete un delito de homicidio involuntario.

En apoyo de su argumento cita el apelante decisiones de este Tribunal interpretando los preceptos del art. 328 del Código Penal; pero un reexamen de las mismas nos lleva a

---

(²) La intención de matar no es elemento del homicidio involuntario.

concluir que son inaplicables al caso de autos, que se rige por las disposiciones del art. 203 de dicho Código, según aquí las interpretamos, y no por las del citado artículo. (³)

Carece de mérito la contención de que lo único que se le imputó al apelante fué el haber manejado a excesiva velocidad, "lo que solamente constituye prueba *prima facie* de negligencia." Se le acusó de haber conducido el vehículo "con tal negligencia o descuido, conduciéndolo a una mayor velocidad por la carretera que conduce de Caguas a Río Piedras, sin tomar en cuenta las condiciones del camino o el tránsito, y dejándolo salir de la carretera en forma que arrolló al ser humano Pablo Figueroa Sierra", y al jurado se le presentó prueba bastante, que creyó, para llegar a la conclusión de que El Pueblo había probado el delito. Al decirse que la velocidad exagerada es únicamente evidencia *prima facie* de negligencia, lo que se quiere significar es que el procesado puede presentar prueba para justificarla o explicarla, y destruir el caso establecido *prima facie*, si le es posible, *Pueblo v. Piñeiro*, ante pág. 531; *State v. Ligman*, 91 P.2d 457 (Utah), pero en modo alguno que la excesiva velocidad de por sí no pueda servir de base a un veredicto de culpabilidad, si se demuestra que fué ilegal o negligente el manejar el vehículo a tal velocidad, y que debido a ello ocurrió el homicidio. De otra

---

(³) El art. 328 del Código Penal, prescribe que:

"Artículo 328.— (Según quedó enmendado por la Ley núm. 51 aprobada en 13 de abril de 1916, pág. 108). Todo conductor, maquinista, guardafreno, guarda-aguja, u otra persona encargada del todo o en parte de cualquier vagón, locomotora, tren de ferrocarril, automóvil o embarcación y cualquier despachador de trenes (*train dispatcher*), telegrafista, jefe de estación o cualquier otra persona encargada del todo o en parte del deber de despachar o dirigir los movimientos de dicho vagón, locomotora, tren de ferrocarril, automóvil o embarcación, que por imprudencia temeraria o descuido, lo dejase o hiciese chocar con otro vagón, locomotora, automóvil o embarcación, tren o cualquiera otro objeto o cosa, ocasionando de este modo la muerte de una persona, incurrirá en pena de presidio por un término máximo de cinco años.

"Si como consecuencia del choque resultase daño para alguna persona, dicho conductor, maquinista, guardafreno, guarda-aguja u otra persona, incurrirá en pena de cárcel por un término máximo de dos años, o multa máxima de mil dólares, o en ambas penas a discreción de la corte."

suerte, se establecería la absurda y peligrosa doctrina de que los conductores de automóviles tienen carta blanca para conducirlos a la velocidad que quieran, aunque por esa causa puedan ocasionar la muerte, y en efecto la ocasionen.

En el tercer señalamiento, se apunta como error el que se permitió por el tribunal sentenciador que un testigo de cargo declarara que fué al sitio del suceso, algunos días después de haber ocurrido, para medir el ancho de las huellas impresas en la carretera por los neumáticos del automóvil del apelante, en una prueba llevada a cabo en presencia de éste, con el fin de compararlas con las que quedaron marcadas en el lugar en que se dió muerte a Pablo Figueroa Sierra, resultando que ambas eran del mismo ancho. La defensa se opuso a que el testigo depusiera sobre tales extremos, por no haberse demostrado que fuera un perito, por lo cual "no podía hacer experimentos de esta índole con el automóvil del acusado", y por que para llevarlos a efecto tenía que hacerse bajo "las mismas circunstancias, con indicación de tiempo y velocidad", requiriéndose para ello una persona experta. Reitera el apelante ese mismo argumento ante nos, diciendo además, que el admitir la evidencia objetada "equivale a permitir que se traiga prueba de hechos que no constituyen otra cosa que el obligar al acusado a incriminarse a sí mismo", motivo de objeción que no planteó ante el tribunal sentenciador. Este no incurrió en el error que se le atribuye. El testigo no hizo experimentos, ni expresó una opinión al decir que había medido las huellas impresas en la carretera, dando el resultado. Sencillamente declaró acerca de un hecho, y su testimonio era admisible para ser apreciado por el jurado, conjuntamente con la otra evidencia presentada por El Pueblo, con el propósito de identificar el vehículo con el que se ocasionó la muerte. La contención—formulada sin habérsenos llamado la atención a precedente alguno que la sostenga—de que la admisión de dicho testimonio equivale a obligar al acusado a incriminarse, es insostenible, independientemente de que la cuestión no fuera planteada en el tribunal a quo.

En el cuarto señalamiento se sostiene que erró dicho tribunal "al negar las instrucciones especiales en relación con la supuesta fuga del acusado y apelante". En vista de que se alegó en la acusación que éste había huído inmediatamente después del accidente, la defensa solicitó que se instruyera al jurado que "en un caso de esta índole la fuga en sí no constituye negligencia, y por lo tanto no puede considerarse por los Sres. del Jurado como causa determinante de la culpabilidad del acusado". Fué esa la instrucción que dicho tribunal se negó a trasmitir, y se arguye que se equivocó al hacerlo, equivocación que fué agravada, según el apelante, al instruirse al jurado que "En este caso fué admitida en evidencia una declaración jurada del acusado prestada el día 2 de noviembre, y otra prestada por el acusado el día 5 de noviembre, dos declaraciones de fechas distintas y posteriores al 20 de octubre de 1951, con el fin de probar que el acusado hizo manifestaciones falsas y contradictorias para encubrir su relación con los hechos que se le imputan. Esas manifestaciones aunque por sí solas no son suficientes para establecer la culpabilidad del acusado, pudieran sin embargo, ser consideradas por el jurado como circunstancias que tienden a probar un sentimiento de culpabilidad y ustedes deben darle el valor probatorio que les merezcan por la significación que Uds. pueden atribuirle a tales manifestaciones, pues esas son cosas que solamente el jurado puede determinarlas."

La instrucción propuesta por el apelante era innecesaria, ya que el tribunal sentenciador había instruído al jurado correctamente sobre el valor probatorio de la prueba presentada por El Pueblo sobre la huída o fuga del apelante, diciéndole que de creer que éste "no tuvo accidente alguno que causara daño a otra persona y que de haberlo tenido él no pudo darse cuenta del mismo", era su deber "no tomar en cuenta el hecho de que el acusado no se detuvo en el sitio del accidente. . .", pero que "si ustedes entienden que ha quedado demostrado. . . que . . . al manejar su automóvil tuvo un accidente que ocasionó la muerte. . ., a Pablo Figueroa Sierra; sin que aquél

haya probado que no pudo darse cuenta del mismo, y que inmediatamente después se dió a la fuga", entonces debía considerar la siguiente instrucción: "La huída de una persona inmediatamente después de haberse cometido un crimen o después de haber sido acusada de haberlo cometido no es suficiente por sí solo para establecer su culpabilidad y es un hecho que una vez probado puede ser considerado en relación con todas la demás circunstancias al decidir ustedes si el acusado es culpable o inocente. Es sólo el jurado el que está llamado a determinar si la huída ... es una circunstancia que le incrimina porque tiende a demostrar en él la existencia de un sentimiento íntimo de culpabilidad", añadiendo más adelante que "eran los señores del jurado los llamados a apreciar el valor relativo de esa circunstancia".

La doctrina prevaleciente es que los actos del procesado realizados después de haber perpetrado un delito, tales como la huída o fuga, la supresión de evidencia, el hacer manifestaciones engañosas o falsas, son circunstancias para ser apreciadas y ponderadas como tendientes en algún grado a probar un sentimiento de culpabilidad, siendo de la incumbencia del jurado el determinar su significación o insignificancia, así como el peso que merezcan, considerando todas las que concurran en el caso. II Wigmore *on Evidence*, pág. 111, 3ra. ed.; I Wharton's *Criminal Evidence*, págs. 400, 401, 402, 403, 11ma. ed.; *People* v. *Jones*, 63 Cal. 168; *People* v. *Giancoli*, 74 Cal. 642; *People* v. *Fine*, 77 Cal. 147; *People* v. *Ross*, 115 Cal. 233; *People* v. *Flannelly*, 128 Cal. 83; *People* v. *Easton*, 148 Cal. 50; *State* v. *Pettit*, 137 Pac. 335; (Wash.); *Commonwealth* v. *MacMahon*, 22 Atl. 971 (Pa.); *State* v. *Chin Lem*, 176 Pac. 590 (Ore.).

No hay nada objetable en la instrucción que dió el tribunal sentenciador en relación con las declaraciones prestadas por el procesado con posterioridad al accidente. Abbot *Criminal Trial Practice*, pág. 943; II Wigmore *on Evidence*, supra; I Wharton's *Criminal Evidence*, supra.

▮ En los señalamientos quinto, sexto, séptimo, octavo, noveno, décimo y undécimo, sostiene el apelante que el tribunal sentenciador erró al negarse a dar ciertas instrucciones especiales solicitadas por él.

En la primera de ellas, que es a la que se refiere el quinto señalamiento, pidió que se informara al jurado que "Las decisiones de los tribunales varían en cuanto al grado de negligencia necesario para declarar a una persona culpable de homicidio involuntario; pero todas están conformes en que se requiere una negligencia mayor de la que se necesita para establecer el derecho de una persona a obtener indemnización por daños y perjuicios en una acción civil". Se nos dice que esa instrucción fué copiada literalmente de nuestra opinión en *Pueblo* v. *Rodríguez*, 47 D.P.R. 600. Al discutir en ese caso el señalamiento de que era erróneo el veredicto por ser contrario a la evidencia e insuficiente en derecho para establecer la culpabilidad del acusado, sencillamente expusimos el principio que aparece expresado en la mencionada instrucción, pero no decidimos que fuera imperativo el comunicarla como tal al jurado. Una instrucción a ese efecto puede causar confusión, *Pueblo* v. *Pagán*, 49 D.P.R. 436, ([4]) y no bastaría para explicar la negligencia criminal que debe probar el Ministerio Público en un proceso como el que fué incoado contra el apelante, puesto que con decirse que aquélla debe ser de un grado mayor al que se requiere para obtener indemnización en un pleito de carácter civil, sólo se sugieren comparaciones, sin ofrecer base para comparar y sin establecer

---

([4]) En *Pueblo* v. *Rodríguez*, 70 D.P.R. 23—proceso por infracción al art. 328 del Código Penal—dijimos que el tribunal no había tenido el cuidado "de aclararle al jurado que no se trataba de negligencia o descuido corrientes, sino que era menester que esa negligncia o descuido equivalieran a imprudencia temeraria", lo que es correcto de acuerdo con las disposiciones de dicho artículo. También dijimos en dicho caso que el tribunal sentenciador no había tenido el cuidado de informar al jurado que la imprudencia temeraria "tenía que ser de un grado superior al requerido para obtener indemnización en causas civiles", y queremos aclarar que una manifestación a ese último efecto es innecesaria para explicar la negligencia que debe probar El Pueblo en un proceso seguido de acuerdo con el citado art. 328.

norma alguna que pueda orientar al jurado sobre ese elemento del delito, *People* v. *Marconi*, supra. Además, en dicha instrucción 1*a*, se consignó que las decisiones varían en cuanto al grado de negligencia que es necesario probar para que pueda declararse culpable a una persona del delito de homicidio involuntario, manifestación que, aunque se ajuste a lo expresado por nosotros en *Pueblo* v. *Rodríguez*, 47 D.P.R. 600, con el solo objeto de reconocer que existe discrepancia entre las decisiones judiciales, como instrucción carece de valor.

■ Por las razones que acabamos de exponer, y por no encontrarse la palabra "descuido" en el art. 203 del Código Penal, es obvio que el tribunal sentenciador actuó correctamente al negarse a trasmitir la siguiente instrucción 1*b*, comprendida en el sexto señalamiento: "El Código al usar la palabra descuido, no ha querido significar una mera falta de cuidado, sino un grado de negligencia o descuido mayor que se requiere para obtener una indemnización en un caso civil".

Pidió el apelante que se instruyera al jurado, instrucción especial 1*c*, a la que se refiere el séptimo señalamiento, que "En el homicidio involuntario la negligencia debe ser negligencia criminal, pero para que la negligencia sea criminal, es necesario que sea crasa o temeraria. Negligencia crasa es aquélla que toca a los límites de la imprudencia, y negligencia temeraria, tal cual es aplicable al manejo de un vehículo de motor, implica un abandono positivo de las reglas de diligencia y un flemático menosprecio de sus consecuencias". También solicitó que se trasmitiera la siguiente instrucción 1*d*, comprendida en el octavo señalamiento: "La responsabilidad criminal no puede estar basada en todo acto legal descuidadamente realizado, meramente porque tal descuido produzca la muerte de una persona. Para que la negligencia sea criminal es necesario que ésta sea imprudente o temeraria y que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daño a éstos".

Alega el apelante que el tribunal sentenciador erró al negarse a dar las citadas instrucciones, sobre todo, en vista de que en las generales no se instruyó al jurado "sobre la negligencia o descuido crasos, equivalentes a imprudencia temeraria y tampoco . . . a los efectos de que dicha negligencia o descuido crasos debían ser la causa próxima del accidente." Por las razones expuestas en la discusión del segundo señalamiento es obvio que dicho tribunal no incurrió en el error apuntado, y que no estaba obligado a informar al jurado "sobre negligencia o descuido crasos, equivalentes a imprudencia temeraria", ni que la muerte de Pablo Figueroa Sierra tenía que haber sido causada por descuido o negligencia de ese carácter.

▮ Era innecesaria la instrucción especial en el sentido de que "la responsabilidad criminal no puede estar basada en todo acto legal descuidadamente realizado, meramente porque tal descuido produzca la muerte de una persona", toda vez que el tribunal sentenciador había instruído al jurado que: "Por el solo hecho de que un accidente desgraciado y fatal haya ocurrido en que aparezca envuelto el acusado no puede por sí solo probarse ni inferirse que el acusado actuó sin la debida prudencia o circunspección. Al determinar si una persona se condujo con la debida prudencia y la debida circunspección el jurado está obligado a considerar todas las circunstancias que produjeron y rodearon el hecho criminal en controversia, sin que deban llegar a una conclusión por el solo hecho de las consecuencias del accidente". En vista de esta instrucción, no había por qué dar la propuesta por el apelante. *Pueblo* v. *Torres*, 52 D.P.R. 500; *Pueblo* v. *Santana*, 53 D.P.R. 11; *Pueblo* v. *Sánchez*, 55 D.P.R. 351; *Pueblo* v. *Lebrón*, 56 D.P.R. 590.

▮ Como el tribunal sentenciador rehusó trasmitir las instrucciones especiales 1c y 1d, solicitadas por la defensa, las que dió *sua sponte* sobre los elementos del delito objeto del proceso, han sido cuidadosamente examinadas para ver si

incurrió en algún error que pudiera justificar la revocación de la sentencia.

Después de informar al jurado de la definición del delito de homicidio involuntario imputado al apelante, dicho tribunal dió, entre otras, las siguientes intrucciones: "El acto de ocasionar muerte involuntariamente a un ser humano al ejecutar en forma ilegal el acto legal de manejar un automóvil sin observar la debida prudencia o circunspección, constituye un delito de homicidio involuntario . . . Lo que se trata de castigar en un acto criminal de esta naturaleza es la imprudencia, la falta de cuidado, la falta de circunspección, o sea, la negligencia del acusado. Y si la prueba demuestra más allá de duda razonable que tal imprudencia, falta de circunspección o negligencia existió en tal grado que debe considerarse como la verdadera o principal causa del daño—en este caso es la muerte de un ser humano—el Fiscal habrá demostrado la existencia de un delito, sin que tenga obligación de probar que la víctima no contribuyó con su negligencia a la comisión del daño . . . Una persona que ejecuta un acto sin la debida prudencia o circunspección, puede decirse que ha sido . . . negligente, descuidada, una persona poco solícita de sus deberes, y debido a ese descuido, a esa imprudencia, a esa negligencia fué que ocasionó el daño . . . Constituye descuido o negligencia el dejar de observar, para la debida protección de los intereses de otra persona, aquel grado de cuidado, protección o vigilancia que justamente requieren las circunstancias, y por consecuencia de lo cual otra persona sufre algún daño. Como les dije anteriormente en este caso, los Sres. del Jurado están llamados a decidir, si el acusado, al cometer los hechos que se le imputan, procedió o no sin el debido cuidado y circunspección . . . Para resolver la cuestión deberán ustedes tomar en cuenta el hecho de que el concepto de 'cuidado y circunspección' no es absoluto, sino relativo y varía según las circunstancias en cada caso. Eso quiere decir que el grado de cuidado y circunspección que se exige en un caso depende de varios factores, tales como la naturaleza del acto que eje-

cutó, la clase de instrumento o artefacto que manejó el acusado, las circunstancias del momento que debió razonablemente tener en cuenta la persona que lo hizo".

Dió instrucciones el tribunal *a quo* sobre la velocidad a que pueden manejarse los automóviles por las carreteras de la zona rural, diciendo, en parte, que: "La velocidad de un vehículo de motor deberá regularse con el debido cuidado teniendo en cuenta el ancho, el tránsito, uso y condiciones del camino. Nadie deberá guiar a velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario . . . Como les acabo de instruir, los conductores de vehículos de motor en Puerto Rico no están limitados en un máximun de la velocidad por las carreteras de la zona rural . . . La ley establece un máximum variable, es decir, un máximum distinto para cada situación en particular y el conductor al conducir un vehículo no le está permitido correr a mayor velocidad de la que está justificada por las circunstancias en cada caso. Si un conductor es poco cuidadoso y negligente en la apreciación de esas circunstancias y corre a una velocidad excesiva que no le permite ejercer el debido dominio de su vehículo y reducir la velocidad o parar cuando sea necesario para evitar atropellar a una persona que está en la carretera, entonces él ha violado la ley que regula la velocidad de los vehículos de motor por las carreteras de Puerto Rico." (5)

---

(5) El art. 15 de la Ley núm. 279 de 1946 ((2) pág. 599), Ley de Automóviles, según fué enmendado por la núm. 156 de 26 de abril de 1951 ((1) pág. 369), lee así:

"Artículo 15.—(*a*) La velocidad de un vehículo de motor deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones del camino. Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad y parar cuando sea necesario para evitar atropellar a una persona o chocar con algún vehículo u otro artefacto de transporte que esté en la carretera o entre en la misma ajustándose a los requisitos legales y al deber en que están los conductores y otras personas que usan las carreteras de tener el debido cuidado.

"(*b*) Es ilegal conducir un vehículo de motor a una velocidad mayor de veinticinco (25) millas por hora en la zona urbana; o a una velocidad ma-

Las instrucciones, unidas a la definición del homicidio involuntario, dieron al jurado bastante información acerca de que la falta de la debida prudencia o circunspección a que se refirió el tribunal a quo, y que la ley castiga, es en relación con un acto con caracteres de peligrosidad para la seguridad humana, y no respecto a un acto cualquiera.

Estamos plenamente convencidos que dichas instrucciones no lesionaron los derechos del apelante, y que consideradas globalmente, ilustraron suficientemente al jurado sobre los elementos del delito que El Pueblo estaba obligado a probar para que aquél pudiera deliberar y llegar a un veredicto a sabiendas de lo que hacía. ([6])

Se alega en el noveno señalamiento que la corte a quo debió dar la instrucción especial 1e, solicitada por la defensa, que lee así: "La velocidad permitida por ley en Puerto Rico es la siguiente: 25 millas por hora en una zona urbana; o a una velocidad mayor de 15 millas por hora al doblar una curva o intersección, donde la vista no fuere clara por un trecho de 100 metros hacia delante, o al pasar una zona donde hubiere escuelas públicas ubicadas; o a una velocidad de 45 millas por hora en los demás casos".

---

yor de quince (15) millas por hora al doblar una curva donde la vista no fuere clara por un trecho de cien (100) metros hacia delante; o cruzar una intersección a una velocidad mayor de quince (15) millas por hora cuando el conductor del vehículo no pueda ver claramente los vehículos que se acerquen o puedan acercarse a dicha intersección dentro de un límite de cincuenta (50) metros en todas las direcciones, excepto en aquellas intersecciones en que el tránsito esté regulado por luces de tránsito en cuyo caso el conductor que tenga derecho a seguir podrá hacerlo a la velocidad fijada por la zona urbana; o a una velocidad mayor de quince (15) millas por hora al pasar una zona donde hubiera escuelas ubicadas. El Comisionado del Interior queda autorizado para establecer zonas y fijar límites de velocidad para las mismas dentro de los límites fijados en esta Ley; y cuando así lo haga deberá fijar letreros o avisos indicando la velocidad máxima."

([6]) Lo expuesto en la discusión del segundo señalamiento habrá de facilitar la labor de instruir al jurado en procesos por homicidio involuntario, bajo la segunda modalidad de dicho delito. No está envuelta la primera, de acuerdo con la cual, constituye homicidio involuntario ocasionar la muerte "al realizarse un acto ilegal, que no constituyere delito grave (felony)", puesto que al jurado no se le instruyó sobre dicha modalidad.

La citada instrucción se basaba, en parte, en las disposiciones del inciso (*b*) del art. 15 de la Ley núm. 279 de 5 de abril de 1946 (Ley de Automóviles), que habían sido enmendadas por las de la Ley núm. 156 de 26 de abril de 1951, véase escolio 5, en consonancia con las cuales se instruyó al jurado. Aun de haber estado en vigor las que le sirvieron de fundamento, el tribunal sentenciador no hubiera errado al negarse a trasmitirla, puesto que por sí sola hubiera podido dar lugar a la creencia, desde luego errónea, de que si en un estatuto se fija el límite de velocidad a que pueden ser conducidos los automóviles, esto significa que pueden manejarse a cualquier velocidad dentro del límite, aunque ello pueda ocasionar la muerte.

■ En el décimo señalamiento se sostiene que fué error del tribunal sentenciador el negarse a trasmitir la siguiente instrucción especial, 1*f*: "Si los Sres. del Jurado creen que no fué el acusado el que produjo la muerte, o que de serlo, no actuó con negligencia criminal, esto es, negligencia crasa, imprudente o temeraria, deben absolverlo del delito que se le imputa". No hubo tal error. La primera parte de dicha instrucción la cubrió ampliamente el tribunal en las instrucciones generales que había trasmitido, y la segunda, la que define la negligencia criminal, era improcedente por razones ya discutidas.

También porque era innecesario, debido a las instrucciones que habían sido comunicadas *sua sponte*, somos de opinión que el tribunal actuó correctamente al negarse a trasmitir la instrucción especial 1*g*, a que se refiere el undécimo señalamiento, en el sentido de que: "Si los Sres. del Jurado tienen duda razonable en cuanto a si fué el acusado el que produjo la muerte, o no, o si tienen duda razonable en cuanto a si el acusado actuó con negligencia criminal, o no, deben darle el beneficio de esa duda y absolverlo".

En los señalamientos duodécimo, décimotercero, décimocuarto, y décimoquinto, ataca el apelante varias de las instrucciones—algunas de las cuales han sido objeto de discu-

sión—fundándose en que ellas demuestran que el tribunal sentenciador "actuó movido por pasión, prejuicio y parcialidad." No existe justificación alguna para tan seria imputación.

Por las razones expuestas en el curso de esta opinión, no tiene razón alguna el apelante al sostener en el señalamiento décimosexto, que el tribunal a quo incurrió en error "al negar la reconsideración solicitada para que se trasmitieran al jurado las instrucciones especiales solicitadas por la defensa".

*La sentencia apelada deberá ser confirmada.*