EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JULIO OLMO, acusado y apelante.

*Número:* CR-62-404      *Resuelto:* 30 de septiembre de 1963

---

*A. Viera Martínez,* abogado del apelante; *J. B. Fernández Badi-llo, Procurador General,* y *Nilita Vientós, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante, conduciendo un vehículo pesado de motor arrolló a un ser humano causándole la muerte. La prueba de cargo establece que el día en que ocurrió el accidente el acusado había estado tomando cerveza. Se tomó unas cuantas entre las diez y media de la mañana y las dos y media de la tarde. El accidente ocurrió alrededor de las tres. Un testigo declaró "yo pude notar que él estaba moviéndose de lado a lado, dando traspiés, entonces se montó en el truck como pudo, arrancó el truck y más alante dio una enfrenada aceleradamente, que no tenía necesidad de enfrenar y después de ahí se paró y siguió otra vez de nuevo para su camino". Esto ocurrió a las once y media de la mañana. A las dos y media ese mismo testigo declara que el acusado volvió al cafetín a tomar cerveza y luego "volvió y hizo la misma maroma, que por lo que nosotros vimos al subirse al truck no podía, cayéndose y volvió y arrancó así, violentamente hacia alante y la rueda trasera así dio un zig zag y volvió y arrancó a una velocidad tremenda por allí para arriba". Esto ocurrió diez minutos antes del accidente. Otro testigo manifestó que lo vio "embalao" antes de chocar con un árbol. Al dar con el árbol siguió para adelante dando tumbos y ahí arrolló a la víctima.

Declarado culpable por un jurado le impusieron dos años de cárcel. Apela y apunta para sostener su recurso, entre otros fundamentos, que los hechos relatados no constituyen el delito de homicidio involuntario.

■ 1. La acusación radicada contra el apelante le imputó que "ilegalmente, mientras manejaba un vehículo de motor . . . sin guardar la debida prudencia, cuidado y circunspección, conduciéndolo en estado de embriaguez y a una velocidad exagerada, sin obedecer las leyes de tránsito, dando zig zags por la carretera sin tener en cuenta los viandantes

que caminaban por la misma. . . . lo hizo con tal negligencia y descuido que arrolló al ser humano Marcelo García Cardona produciéndole golpes y heridas que le ocasionaron la muerte."

La prueba presentada sostiene lo alegado en la acusación. El acusado comenzó a tomar cerveza a las diez y media de la mañana. Ya a las dos y media o diez minutos antes del accidente montó en el camión, evidentemente en estado de embriaguez. "Arrancó a una velocidad tremenda" y al acercarse al árbol con el cual chocó antes de arrollar a la víctima, un testigo afirmó que lo vio "embalao". Es enteramente aplicable lo expuesto en *Pueblo* v. *López*, 77 D.P.R. 607 (1954): "Cuando se ejecuta un acto legal de esas potencialidades en forma ilegal, o sin las precauciones que, dado el carácter peligroso del acto, deberían esperarse de una persona de ordinaria prudencia, y como consecuencia de ello se causa la muerte, el autor comete un delito de homicidio involuntario". Y este mismo caso sostiene que se comete el delito "si se demuestra que ilegal o negligente al manejar el vehículo a tal velocidad, y que debido a ello ocurrió el homicidio".

2. Sostiene el apelante que no puede hacérsele responsable de la muerte, "porque en ese momento no llevaba el control del vehículo debido a que estaba inconsciente por las lesiones sufridas momentos antes". Es frívolo el apuntamiento. No puede el acusado separar cada uno de los actos que intervinieron en el desgraciado accidente. Chocó con el árbol porque conducía el camión a una velocidad exagerada en estado de embriaguez dando zigzags y sin tener en cuenta las condiciones del lugar. Todo lo ocurrido es parte de una sola transacción.

3. El apelante sostiene que el tribunal de instancia erró al no dar instrucciones específicas sobre accidente desgraciado. El juez explicó al jurado cuál era la teoría de la defensa, que se había encontrado con otro camión de frente;

que apenas cabían dos camiones en la carretera; que el camión patinó en la gravilla que había en la orilla; que al chocar con el árbol quedó inconsciente. El juez al instruir al jurado en el sentido de que el homicidio podría justificarse si se cometiere casualmente por efecto de un accidente desgraciado, si las personas que cometieren el acto o incurrieren en la omisión por efecto de alguna desgracia o casualidad, si resultare que no hubo en ello designio o propósito dañoso ni culpable negligencia. Esta instrucción era suficiente tomada en conjunto con las otras que dio el juez al instruirle sobre el veredicto que podía rendir el jurado.

■ 4. El cuarto error lee así: "Cometió error el Tribunal sentenciador al admitir prueba de bebidas embriagantes supuestamente tomadas por el acusado dos horas o más antes del accidente, especialmente cuando la muestra de sangre no pudo ser analizada por culpa del Estado y al admitir prueba del estado del acusado más de una hora antes del accidente."

La prueba como hemos relatado establece que empezó a beber cerveza desde las diez y media de la mañana del día en que ocurrió el accidente y que fue visto ingiriéndolas media hora antes del suceso. Esta prueba era admisible para demostrar el estado de embriaguez en que estaba el acusado cuando se montó en el camión diez minutos antes del accidente.

■ 5. El apelante impugna las instrucciones sobre velocidad. Si bien es cierto que el juez hizo referencia en las instrucciones a la velocidad que establece la ley para zonas y lugares en que no eran aplicables al caso que estaba ventilándose, esto no pudo haberlo perjudicado. Se queja además de que el juez manifestó que "Debo instruirles que en modo alguno la velocidad excesiva de por sí no puede servir de base para un veredicto de culpabilidad", pero que luego les instruyó en el sentido de que "Debo instruirles que en un proceso de homicidio involuntario perpetrado por medio de un automóvil

o vehículo de motor, la velocidad exige de por sí [*sic*] y puede servir de base para un veredicto de culpabilidad de demostrarse que el acusado fue o actuó de manera ilegal y negligente al manejar un vehículo de motor a tal velocidad y debido a ello ocurrió el homicidio en cuestión". Sostiene que son contradictorias. La segunda instrucción amplía la primera. Es la explicación de la ley según expuesta en *Pueblo* v. *López*, supra.

■ 6. Al instruir al jurado el juez manifestó que "toda persona que en estado de embriaguez manejare un vehículo de motor incurrirá en delito menos grave y que toda persona que en estado de embriaguez manejare un vehículo de motor y ocasionare daños a una persona incurrirá en delito menos grave". El apelante admite que lo antes expuesto es correcto pero que tratándose de un alegado homicidio involuntario en que la embriaguez es un mero acto de negligencia, no debió instruirse al jurado al efecto de que conducir un automóvil en estado de embriaguez es un delito. No se cometió el error señalado. El juez le transmitió las instrucciones correctas. No puede quejarse un acusado, si hay prueba que sostenga que conducía bajo los efectos de bebidas embriagantes, de que el juez le informe al jurado que ese hecho constituye un delito. Es uno de los factores que el jurado debe considerar.

7–8–9. Los restantes errores no ameritan considerarse.

■ Se apuntan tres errores adicionales: (a) El no haber dado unas instrucciones solicitadas. Sólo se copian, pero no se argumentan. No merece ser considerado; (b) El declarar sin lugar una moción que tituló "Arrest of Judgement". La disposición que hemos dado al primer error dispone de éste y (c) La prueba no es suficiente para establecer la culpabilidad del acusado más allá de duda razonable. La prueba presentada por el Estado, creída que fue, establece fuera de toda duda la culpabilidad del acusado.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 15 de mayo de 1959.*