EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN CORTÉS CALERO, acusado y apelante.

*Número:* CR-70-5      *Resuelto:* 3 de marzo de 1971

*Ángel Viera Martínez,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El fiscal formuló cuatro acusaciones contra el apelante por el delito de homicidio involuntario con motivo de haberle ocasionado la muerte a cuatro personas mientras conducía un vehículo de motor.

Los casos se vieron conjuntamente ante un mismo jurado. Fue exonerado en tres de los casos y declarado culpable en el otro. El tribunal le impuso una sentencia de dos (2) años de cárcel y suspendió su licencia de conductor por el término de cinco (5) años.

Señala como primer error el que el tribunal permitiera "que testigos de cargo, que no estaban en posición y en circunstancias que pudieran hacerlo, declararan sobre su apreciación de la velocidad a que corría el vehículo que tuvo el accidente; siendo la velocidad el principal acto de negligencia en que se basan las acusaciones."

Debe aclararse que además de la velocidad excesiva se imputaron en la acusación otros actos de negligencia que fueron expresados así:

". . . Porque el referido acusado Ramón Cortés Calero allá para el día 11 de julio de 1963, en el kilómetro 76, hectómetro 7, de la carretera número dos, avenida Miramar, de Arecibo, Puerto Rico, . . . allí y entonces, ilegal, voluntaria y criminalmente, sin guardar la debida prudencia y circunspección y por su imprudencia temeraria y descuido mientras manejaba como chofer los movimientos de un vehículo de motor—automóvil marca Volkswagen, modelo del 1963, tablillas número 822-636—, a una velocidad exagerada, sin reducir en momento alguno la velocidad que llevaba, sin tocar claxon o aparato de alarma de clase alguna y sin tomar en cuenta el tránsito y uso de la carretera pública por donde caminaba y por su imprudencia, incompetencia y atolondramiento en el manejo de dicho vehículo, arrolló con un

vehículo a un grupo de más de diez personas que se encontraban paradas a la orilla y algunos sobre la superficie de la carretera, entre ellos, Víctor Soto González, causándole la muerte a dicha persona." (Informe Procurador General, pág. 4.)

■ El Código Penal califica de involuntario el homicidio cuando ocurre al realizarse un acto ilegal, que no constituyere delito grave, o al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia y circunspección. Art. 203 del Código Penal (33 L.P.R.A. sec. 635).

■ Como hemos visto en la acusación se imputa al acusado la comisión de varios actos ilegales, que no constituyen delito grave, mientras conducía un vehículo de motor por una carretera pública tales como conducir a velocidad exagerada, no tocar claxon o aparato de alarma alguno, no tomar en cuenta el tránsito y uso de la carretera en el momento del accidente, y conducir el vehículo en forma incompetente y atolondrada, sin la debida prudencia y circunspección. Probados estos actos ilegales, según lo revela la prueba en este caso, o probado alguno de ellos, queda establecido el delito de homicidio involuntario. *Pueblo* v. *Matos Pretto*, 93 D.P.R. 113 (1966); cf. *Pueblo* v. *Negrón*, 79 D.P.R. 296 (1956).

La prueba, resumida correctamente por el Procurador General, demostró que el accidente ocurrió "en la carretera que conduce del pueblo de Arecibo al de Hatillo. Mientras unas personas sujetaban a un joven que había tratado de hurtar un camión que se hallaba estacionado a la orilla de dicha carretera, otro grupo se acercó en ánimo de defender al joven. Se entabló una pelea entre los dos grupos lo cual atrajo a otros observadores aglomerándose en conjunto unos veinte o veinticinco individuos. Mientras éstos se hallaban ocupando parte del pavimento de uno de los dos carriles de la carretera junto al referido camión se acercó el apelante en su vehículo e impactó contra ellos. Como resultado de ello

cuatro de esas personas perecieron y más de diez resultaron heridas."

"La prueba reveló que el accidente ocurrió alrededor de las nueve y cuarenta y cinco de la noche. En el lugar de los hechos la carretera es recta, pavimentada en treinta y tres pies de ancho y estaba alumbrada en un buen trecho recto a lo largo de uno de sus lados. (Véanse Exhibits 1 al 1-i de El Pueblo.) La velocidad en ese trayecto estaba limitada a un máximo de treinta y cinco millas por hora. (T.E. pág. 519.) El apelante en momento alguno tocó bocina ni utilizó los frenos de su vehículo. Con el impacto levantó por el aire los cuerpos de sus víctimas que cayeron luego desparramados en el pavimento en un trecho de unos sesenta pies. Dos de las víctimas que resultaron muertas en el acto cayeron sobre la parte delantera del vehículo. Una de ellas atravesó con su cabeza el cristal delantero y quedó con la parte superior de su cuerpo dentro del asiento del conductor. En esas condiciones el vehículo continuó su marcha y no se detuvo hasta quedar asentado sobre unas piedras amontonadas a la orilla izquierda de la carretera a la distancia de unos ciento cincuenta pies del sitio del accidente. Cuando el vehículo finalmente se detuvo el apelante quedó 'medio atolondrado' con la parte superior de su cuerpo descansando sobre el guía. En ese momento el apelante negó que él era el conductor del vehículo; (T.E. págs. 572–577) también lo negó en el Hospital Municipal. (T.E. pág. 752.) Finalmente lo admitió indicando que primeramente lo había negado por temor a represalias. (T.E. págs. 754–755.)" (Informe Procurador General, pág. 3.)

Dos testigos de cargo declararon sobre la velocidad del vehículo del acusado. Doña Blanca Miguelina Olmo Vda. de Correa declaró que el carro (refiriéndose al vehículo que ocasionó las muertes) venía "bien ligero"; "a más de 60 millas". Explicó lo de las 60 millas a base de su experiencia viajando en automóviles. Dijo que vio las luces del vehículo que se aproximaba a una distancia aproximada de 125 metros y observó que los focos se acercaban "bien ligeros". Un chofer de más de 10 años de experiencia vio que el vehículo venía de Hatillo hacia Arecibo "bastante ligero"; que las luces aumentaban muy rápidamente; que su expresión "bastante

ligero" en términos de velocidad quería decir sobre 60 ó 70 millas y que para él eso es lo mismo que "excesivamente ligero".

■ Estos testimonios respecto a la velocidad del vehículo que conducía el acusado eran admisibles en evidencia. Se trata de dos personas de inteligencia común que pudieron apreciar, aunque no con exactitud matemática, como era de no esperarse, la referida velocidad cuando ocurrió el accidente, calificándola de "bastante ligero"; y "excesivamente ligero". *Pueblo* v. *Rivera*, 79 D.P.R. 742 (1956); *Pueblo* v. *Cruz*, 59 D.P.R. 569 (1941); *Pueblo* v. *Pereira*, 49 D.P.R. 891 (1936); *Torres* v. *Vidal*, 28 D.P.R. 972 (1920); 2 Jones *On Evidence*, Sec. 407 (Ed. 1958); VII Wigmore *On Evidence*, Sec. 1977; 2 Wharton's *Criminal Evidence*, Sec. 553 (12th Ed.).

Correspondía únicamente al jurado darle el peso que les mereciera esos dos testimonios respecto a la velocidad del vehículo. *Pueblo* v. *Pereira*, supra.

■ Independientemente de los dos ya comentados testimonios, la velocidad excesiva y exagerada a que el acusado conducía su vehículo quedó elocuentemente establecida por las consecuencias del accidente (4 muertos y más de 10 personas heridas); y por estos hechos tan trágicos como dramáticos; cuerpos humanos que el impacto levanta por los aires y caen desparramados sobre el pavimento de la carretera en un trecho de unos sesenta pies; cuerpos humanos que caen sin vida sobre la parte delantera del vehículo; un cuerpo que atraviesa con su cabeza el cristal delantero del vehículo y queda en parte dentro del asiento del conductor; un vehículo que después de segar 4 vidas y de herir a tantas personas, continúa su marcha por unos 150 pies más hasta detenerse sobre unas piedras amontonadas a la orilla de la carretera. *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo* v.

684

*Vega Santos*, 88 D.P.R. 272 (1963); *Pueblo* v. *Olmo*, 89 D.P.R. 82 (1963).

■ Se señala como segundo y último error que el "veredicto condenatorio es contrario e inconsistente con los tres veredictos y con la prueba admitida".

El error carece de mérito. El planteamiento sobre la inconsistencia de los veredictos ha sido resuelto repetidamente en contra del apelante. *Pueblo* v. *Quiñones*, Cr. 69-147, Sentencia de 1ro. de junio de 1970; *Pueblo* v. *Santiago González*, Cr. 68-248, Sentencia de 3 de diciembre de 1969; *Pueblo* v. *Feliciano Rivera*, Sentencia de 4 de mayo de 1969; *Pueblo* v. *Negrón*, 73 D.P.R. 559 (1952). Véase además, *Dunn* v. *United States*, 284 U.S. 390; 76 L.Ed. 356; 18 A.L.R.3d 259; 81 A.L.R.2d 866.

*Por los motivos expuestos se confirmará la sentencia apelada.*