EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANÍBAL H. NEGRÓN, acusado y apelante.

Número 16005.
*Sometido:* 2 de abril de 1956. *Resuelto:* 31 de mayo de 1956.

*Santiago Polanco Abréu* y *Raúl A. Feliciano,* abogados del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

*PER CURIAM:* En una segunda Moción de Reconsideración, inspirada sin duda en su arraigado sentido de responsabilidad profesional para con su representado, el letrado que representa al apelante, partiendo de cierta ambigüedad en el análisis que hicimos en nuestra opinión *per curiam* de 6 de marzo de 1956 del tercer error de los señalados en su alegato en apoyo del presente recurso, expresa nuevamente su inconformidad con nuestras conclusiones y afirma con inmoderada vehemencia, no ciertamente la más plausible en su forma, que este Tribunal "ha violado el mandato legislativo establecido en el Código de Enjuiciamiento Criminal y el cual reconoce a todo acusado de delito en el Tribunal Superior, el derecho de apelar para ante el Tribunal Supremo"; que este Tribunal "no resolvió ni siquiera consideró superficialmente los errores señalados en el alegato presentado por el acusado, y señalados nuevamente en su Moción de Reconsideración" y que "así privó al acusado de su derecho a apelar".

El tercer señalamiento de error, ampliado luego en la Moción de Reconsideración e incorporado por referencia en la presente, carece de mérito. Es cierto que en la definición del homicidio involuntario, que aparece al principio de sus instrucciones al jurado, el tribunal sentenciador omitió la frase *"que pudiere ocasionar muerte".* Sin embargo, dicha

omisión no lesionó los derechos del apelante. Considerándolas en conjunto, las instrucciones dieron suficiente información al jurado sobre el punto de que la falta de la debida prudencia o circunspección es en relación con un acto de caracteres de peligrosidad para la seguridad humana y no respecto a un acto cualquiera. Así por ejemplo, inmediatamente después de la definición del homicidio involuntario de que se queja el apelante, el tribunal sentenciador dijo al jurado lo siguiente:

"El acto de dar muerte involuntariamente a un ser humano al ejecutar ilegalmente el acto legal de manejar un automóvil sin la debida prudencia y circunspección, constituye un delito de homicidio involuntario. Para ello no es necesaria la intención de matar. La falta de prudencia o circunspección, envuelve negligencia.

. . . . . . . .

"Una persona que efectúa un acto sin la debida prudencia o circunspección, puede decirse que ha sido una persona negligente, descuidada o poco solícita de sus deberes y debido a ese descuido, a esa imprudencia, a esa negligencia, fué que ocasionó el daño a una tercera persona. Constituye descuido o negligencia el dejar de observar bien para la protección de los intereses de otra persona, aquel grado de cuidado, protección y vigilancia que justamente requieren las circunstancias y como consecuencia de lo cual, otra persona sufre algún daño.

"Cuando una persona está haciendo algo que de por sí es peligroso o está a cargo de alguna cosa u objeto que al usarse es peligroso y al hacer uso de esa cosa, por ejemplo, manejando un automóvil, no toma aquellas debidas precauciones que una persona de prudencia ordinaria debe tomar y su actuación resultare en la muerte de otra persona, el acto de esa persona, por su negligencia es un acto criminal contra la persona muerta, aun cuando su negligencia no equivalga a una desenfrenada o descuidada despreocupación de la seguridad o de la vida humanas.

"La negligencia criminal en un caso de homicio involuntario, tiene que ser una negligencia crasa, no la negligencia corriente, sino aquel grado de negligencia que demuestre un desprecio por la vida ajena y se ejécuten actos que al ejecutarse, si no se toma el debido cuidado y circunspección, resulten en la muerte de otra persona."

Más adelante el juez, con sumo cuidado, expresó al jurado en sus instrucciones lo siguiente:

"De acuerdo con la Ley de Automóviles, en todo sitio urbano, está prohibido correr a más de veinticinco millas por hora. No así en carreteras públicas que no sean urbanas. En las carreteras públicas solamente está limitada la velocidad por los signos o cartelones que la Ley de Automóviles autoriza a poner al Secretario del Interior de Puerto Rico. Es decir, que en carreteras públicas se puede correr a cualquier velocidad, siempre y cuando no haya signo ninguno. Cuando hay signos, solamente se puede correr a la velocidad que diga el signo. Ese signo el que lo puede poner es el Secretario del Interior de Puerto Rico. En los sitios urbanos solamente se podrá correr a veinticinco millas por hora como máximo.

"Ahora bien, aún en las propias carreteras en que no haya límite de velocidad, como en los sitios urbanos donde el límite es solamente veinticinco millas por hora, solamente se puede correr a aquella velocidad que exijan las circunstancias de que estén rodeados el momento y el sitio por donde se corre.

"No importa que en un sitio no haya signos, en una carretera rural, es decir, fuera de la población, la velocidad máxima debe ser aquella que aconseje la prudencia. Y la prudencia lo que aconseja es que si la carretera es angosta, no es ancha, si discurre mucho tránsito y mucho tráfico, si hay mucho movimiento de peatones, si la carretera es mala, pues la velocidad debe ajustarse a esas condiciones de la carretera. Es decir, que la velocidad máxima a que se debe correr en una carretera pública, depende de las circunstancias que rodeen el momento cuando se está corriendo. Se debe tomar en consideración el ancho de la carretera, el tránsito que discurre, el tráfico que discurre, el movimiento de peatones, las condiciones físicas de la carretera, la topografía y hasta debe tomarse en cuenta el estado del automóvil, las condiciones mecánicas del automóvil. Por ejemplo, en un Cadillac nuevo, de ocho o doce cilindros, con sus frenos bien ajustados, sus luces completas, todo el mecanismo completo, perfecto y nuevo, pues la prudencia permite, no es que aconseje, permite correr quizás un poco más que un Ford de mil novecientos catorce, con sus luces defectuosas, sus frenos defectuosos y sus gomas en malas condiciones. Es decir, que la persona que maneja un automóvil es el juez propio de las condiciones en que debe correr. En los sitios urbanos la velocidad máxima—si estoy equivocado me puede corregir la defensa o el fiscal—es de

veinticinco millas por hora, pero aunque sea veinticinco millas por hora en la población, siempre tiene que tomarse en cuenta el tránsito, el tráfico, el ancho de la carretera, la situación de la carretera, todas las circunstancias que les he expresado para desarrollar la velocidad.

"Pero es cierto, por ejemplo, este es un ejemplo que les doy. En este caso no fué en la carretera Ponce de León que sucedió. Pues a determinadas horas del día y en determinadas circunstancias, aunque la ley como medida general permite correr veinticinco millas por horas, sin embargo, hay momentos en que diez millas por hora resultarían exageradas. Pero también veinte millas podrían considerarse no exageradas en otras circunstancias. Por ejemplo, a la hora del tráfico, mayor o como diría Agapito, a la hora del "rush", la carretera Ponce de León, cuando los niños están saliendo de la escuela a las once y media, quizás una velocidad de quince millas por hora es exagerada. Sin embargo, a las diez de la mañana cuando está todo el mundo en sus labores, los automóviles están recogidos y los estudiantes están dentro de la escuela, pues las veinticinco millas de máximo, es una velocidad razonable y prudente y legal. Es decir, que se determina velocidad por las circunstancias, las horas, la forma de la carretera, la condición del automóvil, el tránsito, el tráfico, el ancho, todas esas circunstancias. Es una cuestión que es de sentido común, de juicio. Esas son en general, las instrucciones que les tengo que dar en cuanto al delito en sí."

En este caso, al igual que en *Pueblo* v. *López*, 77 D.P.R. 607 (1954), las instrucciones "ilustraron suficientemente al jurado sobre los elementos del delito que el Pueblo estaba obligado a probar para que aquél pudiera deliberar y llegar a un veredicto a sabiendas de lo que hacía." La omisión de la frase "que pudiere ocasionar muerte" quedó subsanada por las demás instrucciones del tribunal sentenciador que citamos anteriormente y que son casi idénticas a las que aparecen en el caso de *López*, supra, pues en ellas se aclara que para que un acto pueda constituir homicidio involuntario debe tener caracteres de peligrosidad para la vida humana, es decir, potencialidades conocibles y aparentes de causar la muerte. El único error que cometió el juez al respecto fué favorable al acusado: instruyó al jurado que "la negligencia criminal

en un caso de homicidio involuntario tiene que ser una negligencia crasa, no la negligencia corriente, sino aquel grado de negligencia que demuestre un desprecio por la vida ajena . . ." Véase *Pueblo* v. *López,* supra.

■■ También carece de mérito el cuarto señalamiento de error fundado en el siguiente párrafo de las instrucciones:

"Cuando una persona está haciendo algo que de por sí es peligroso o está a cargo de alguna cosa u objeto que al usarse es peligroso y al hacer uso de esa cosa, por ejemplo, manejando un automóvil, no toma aquellas debidas precauciones que una persona de prudencia ordinaria debe tomar y su actuación resultare en la muerte de otra persona, el acto de esa persona, por su negligencia es un acto criminal contra la persona muerta, aun cuando su negligencia no equivalga a una desenfrenada o descuidada despreocupación de la seguridad o de la vida humanas."

No es exacto que el juez en dicho párrafo haya manifestado al jurado que "un automóvil es un instrumento o cosa peligrosa per se". El uso de las palabras *"de por sí es peligroso"* se refiere a un acto ("haciendo algo que de por sí es peligroso"). El citado párrafo de las instrucciones, salvo que se le atribuya un alcance claramente equivocado, sólo dice que el acto de manejar un automóvil puede ser peligroso si no se toman las precauciones debidas. Sobre todo, no puede considerarse aisladamente: el tribunal a quo dió en las demás instrucciones información detallada sobre todas las circunstancias que debía tener en cuenta el jurado para determinar si una persona está operando un automóvil negligentemente o con la debida prudencia. Por tanto, es inevitable concluir que se informó con suficiente claridad al jurado que un automóvil es una cosa u objeto que puede constituir un peligro para la vida humana dependiendo de la forma en que se opera, o sea, que el acto de guiar un automóvil puede ser negligente y peligroso si no se observa la debida prudencia.

■ El tribunal a quo, antes de terminar sus instrucciones al jurado, preguntó *específicamente* al abogado de la defensa, que no era el mismo letrado que en esta moción comparece, si deseaba alguna instrucción especial y éste contestó que no.

Dicho letrado tampoco hizo objeción, ni aún de carácter general, a ninguna de las instrucciones que el tribunal sentenciador acababa de trasmitir al jurado. No existiendo error alguno que lesionara derechos fundamentales del acusado, éste renunció a cualesquiera otros errores en dichas instrucciones. *Pueblo* v. *Lampón*, 78 D.P.R. 109 (1955); *Pueblo* v. *Muñiz*, 73 D.P.R. 312 (1952) y *Pueblo* v. *Feliciano*, 70 D.P.R. 875 (1950).

El apelante alega además que este Tribunal no resolvió el problema planteado en el primero y segundo señalamientos de error, a saber: (1) "que el veredicto rendido por el jurado es contrario a los hechos" y (2) "que el veredicto rendido por el jurado es contrario a derecho". En nuestra anterior opinión *per curiam* hicimos un resumen de la prueba, que basta para demostrar que estos errores no fueron cometidos. Pero el apelante insiste en que la prueba no justifica un veredicto de culpabilidad por el delito de homicidio involuntario. A su juicio, esta conclusión queda demostrada por el hecho de que, según él, no se presentó testimonio de ninguna persona con cualificaciones para declarar sobre la velocidad del automóvil que guiaba el acusado *en términos de millas por hora*. Sin embargo, la velocidad del automóvil no es la única prueba que justifica la conclusión del jurado en cuanto al grado de negligencia criminal que exige el art. 203 del Código Penal y, además, aquí no tiene importancia alguna que el testigo Lopategui declarara sobre la velocidad *en términos de millas por hora*. No se puede impugnar ahora la admisibilidad del testimonio de Lopategui. Cuando el referido testigo (en interrogatorio directo) dijo que el automóvil venía a una velocidad de 35 a 40 millas, el letrado de la defensa no hizo ninguna objeción, y más tarde, en el contrainterrogatorio, Lopategui volvió a declarar sobre la velocidad del automóvil *en términos de millas por hora*, contestando preguntas *formuladas por la defensa*. La prueba demostró, por otro lado, que el automóvil del acusado tenía el farol derecho apagado y que el carro que Alcaide estaba empujando se encontraba bien a

la derecha, en parte sobre lo que se llama el paseo de la carretera (es decir, el sitio donde pasan los peatones) al momento de ocurrir el accidente. También demostró que no había más ningún vehículo en la ancha carretera (excepto el del testigo Lopategui) y que el vehículo de Alcaide tenía sus bombillos delanteros y traseros debidamente encendidos. Hubo también prueba sobre la fuerza del impacto que es índice bastante para justificar una conclusión en cuanto a la velocidad del vehículo. La defensa no presentó prueba alguna y, por el contrario, sometió el caso al jurado por la prueba del ministerio público. No puede ahora argumentarse, con visos de razón, que el veredicto rendido por el jurado es contrario a los hechos y que no hubo prueba para justificar la conclusión a que llegó el jurado sobre la negligencia criminal del acusado por el mero hecho de que Lopategui fué el único testigo que declaró sobre la velocidad del automóvil *en términos de millas por hora.*

Hasta aquí los fundamentos para declarar sin lugar la primera solicitud de reconsideración del apelante. Los hemos expuesto ahora, no impelidos por las imputaciones hechas por un miembro de nuestro Foro en la presente moción, sino como ilustración a la profesión del proceso de análisis con que el Tribunal, en un programa sobrecargado de labor, pasa sobre las cuestiones planteadas en mociones de reconsideración al disponer de ellas con un *no ha lugar.*

*Debe declararse sin lugar la solicitud de reconsideración.*