EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDDY A. ÁLVAREZ DE JESÚS, acusado y apelante.

*Número:* CR-69-81      *Resuelto:* 4 de junio de 1970

*Julio Fernández Cabrera,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante fue convicto de asesinato en primer grado. El veredicto del jurado fue por unanimidad. También fue hallado culpable de una infracción al Art. 4 de la Ley de Armas. Fue sentenciado a cumplir una pena de reclusión perpetua. En el caso de portación y uso de arma prohibida fue sentenciado a cumplir un año de cárcel.

Apunta que incidió el tribunal de instancia (1) al dar lectura a la acusación en sus instrucciones al jurado, (2) al hacer preguntas y comentarios durante el proceso que prejuiciaron a los señores del jurado y (3) al permitir a una persona presidir el jurado cuando era tío político del fiscal que actuaba en la vista del caso. Por último apunta que el veredicto no está justificado por la prueba. No se ha aducido ley o autoridad otra alguna en apoyo de uno o más de los alegados errores. Por el contrario, estos apuntamientos no encuentran apoyo ni en los hechos ni en el derecho.

De acuerdo con la prueba de cargo, el apelante y Carmen Busanet tuvieron una disputa relacionada con el uso de una manguera en una pluma de agua pública del vecindario. Intervino el tío de ella, Ángel Rodríguez. El apelante se retiró a su casa diciéndole a Rodríguez que lo esperase. Regresó con un cuchillo; empujó a Rodríguez y lo hirió. Este cayó boca abajo. El testimonio de Carmen Busanet a ese efecto fue corroborado por otro testigo quien testificó que Rodríguez cayó boca arriba y entonces el apelante "lo viró y empezó a darle . . . las puñaladas . . . estaba como en cuclillas sobre él . . . ." Por la defensa testificó Epifania Jusino que luego de la discusión Carmen fue a buscar a su tío; que mientras éste y el apelante forcejeaban, Carmen fue a su casa y trajo el cuchillo y empezó a darle puñaladas al apelante y que éste se tapaba con el cuerpo del occiso; que el apelante y Carmen también resultaron heridos; y que el segundo testigo de cargo no estaba allí. El marido de Epi-

fania Jusino identificó el cuchillo como uno que se usaba en el negocio de la Busanet.

1.—Cierto es que el juez sentenciador comenzó a dar sus instrucciones al jurado leyéndoles la acusación. Pero instruyó amplia y correctamente sobre los posibles veredictos, presunción de inocencia, duda razonable, apreciación de la prueba, resolución de conflictos en la misma, y, por último, a petición de la defensa, corrigió su instrucción sobre homicidio.

En *Pueblo* v. *Santos López*, 87 D.P.R. 624, 631 (1963), el juez sentenciador en sus instrucciones siguió las palabras de la acusación pero añadió al final la frase "como lo realizaron" lo que constituía una apreciación personal impropia. No sancionamos entonces el que en efecto se leyera el texto de la acusación sino la observación personal del tribunal de que el delito fue cometido.

En *Pueblo* v. *Arce Rodríguez*, Sentencia de 9 de febrero de 1966, dijimos que el error de la secretaria de leer la palabra "subsiguiente" en nada perjudicó al acusado dada la fortaleza y claridad de la prueba de cargo.

■ Se ha resuelto que no es impropio leer la acusación al jurado aun varias veces durante el juicio y en el curso de las instrucciones. *Sylvia* v. *State*, 210 So.2d 286, 288 (Fla. 1968); *State* v. *Johnson*, 126 So.2d 797 (La. 1967); *State* v. *Alfonsi*, 147 N.W.2d 550 (Wis. 1967); *Williams* v. *Beto*, 354 F.2d 687 (5th Cir. 1966); *State* v. *Taylor*, 217 A.2d 1, 11 (N.J. 1966); *United States* v. *Press*, 336 F.2d 1003, 1016 (9th Cir. 1964). En *People* v. *Ramey*, 36 Cal. Rptr. 291 (1964), se dictaminó que la lectura de la acusación en las instrucciones era enteramente correcto. En *State* v. *Gilmore*, 81 S.W.2d 431 (Mo. 1935), se dijo que el tribunal no viene obligado, por su cuenta, a instruir que la acusación no hace prueba pero que si el acusado solicita la instrucción la debe dar.

■ El apelante tuvo amplia oportunidad de levantar esta cuestión ante el tribunal de instancia así como logró que

dicho tribunal enmendase sus instrucciones sobre el delito de homicidio. Al dejar de hacerlo renunció a cualesquiera errores en las instrucciones que no lesionaran sus derechos fundamentales. *Pueblo* v. *Del Valle*, 91 D.P.R. 174 (1964).

■ 2.—Nuestro examen de la transcripción de la prueba nos hace concluir que es inmeritorio el apuntamiento de que el tribunal de instancia intervino en el examen de los testigos en forma perjudicial para el apelante.

El juez sentenciador intervino repetidas veces para aclarar situaciones y hechos y para resolver planteamientos en muchas ocasiones favorablemente al apelante. En otras ocasiones intervino para evitar preguntas ya hechas o incidentes entre el fiscal y la defensa. Aunque en algunas ocasiones el juez sentenciador hizo comentarios innecesarios como el de calificar de "bombardeo" el interrogatorio de un testigo por parte de la defensa el cual el tribunal aclaró que "Eso no va en menoscabo del abogado.", no se ha señalado, ni hemos encontrado que tuvieran un alcance tan perjudicial que privara al apelante de un juicio justo e imparcial. *Pueblo* v. *Martínez Santiago*, 91 D.P.R. 879 (1965); *Pueblo* v. *Díaz Díaz*, 91 D.P.R. 759, 762 (1965); *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962).

3.—Se alega que el veredicto en este caso es contrario a derecho y a la prueba presentada.

■ En apoyo de este apuntamiento, señala el apelante que el testimonio de Carmen Busanet fue inseguro, prejuiciado e interesado pues el occiso era tío suyo; que de su testimonio y de la prueba de la defensa surge que el cuchillo era de ella; que lo trajo de su casa y que al atacar al apelante con dicha arma, apuñaló al occiso, hirió al apelante y se hirió ella; que fue conflictivo el testimonio de los testigos de cargo con respecto a la posición en que se encontraba el interfecto cuando fue acuchillado por el apelante.

Es cierto que la prueba era conflictiva pero no encontramos que el jurado actuara con pasión, prejuicio o parcia-

lidad al dirimir los conflictos en la misma y al apreciarla. Como dijimos en *Pueblo* v. *Ramos*, 35 D.P.R. 765 (1926), "Contradicciones de esta clase entre testigos honrados de una de las partes son tan frecuentes en casos criminales y en casos de accidentes que prácticamente forman la regla general. Es raro que los testigos de una de las partes estén de acuerdo respecto a los detalles. Es mucho más probable estar en completa armonía en casos en que los testigos han sido preparados."

4.—Apuntó el apelante que el tribunal de instancia incidió al permitir que el Sr. Raúl Roig actuara como jurado y como Presidente del jurado cuando dicho señor era tío político del fiscal que representaba al Pueblo de Puerto Rico en la vista del caso. Este apuntamiento ha sido retirado por la defensa por haber determinado luego que tal parentesco no existe.

*En vista de lo expuesto, debe confirmarse la sentencia dictada en este caso por el Tribunal Superior, Sala de Ponce, en 29 de enero de 1968.*

El Señor Juez Presidente y el Juez Asociado Señor Santana Becerra no intervinieron.