EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TOMÁS TOLEDO BARBOSA, acusado y apelante.

*Número:* CR-76-2     *Resuelto:* 1ro. de noviembre de 1976

*Heyda Vigil McClin,* abogada del acusado; *Miriam Naveira de Rodón, Procuradora General,* y *Josefa A. Román* y *Justo Gorbea Varona, Procuradores Generales Auxiliares,* abogados de El Pueblo.

### SENTENCIA

Se confirma la sentencia apelada. Así lo pronunció y manda el Tribunal y lo certifica el señor Secretario. El Juez Presidente, Señor Trías Monge anunció la sentencia del Tri-

---

bunal y emitió una opinión a la cual se unen los Jueces Asociados Señores Rigau, Torres Rigual y Díaz Cruz. El Juez Asociado Señor Martín concurre sin opinión. El Juez Asociado Señor Irizarry Yunqué emitió una opinión disidente a la cual se unen los Jueces Asociados Señores Dávila y Negrón García.

(Fdo.) Ernesto L. Chiesa

*Secretario General*

—O—

Opinión emitida por el Juez Presidente, Señor Trías Monge, a la cual se unen los Jueces Asociados Señores Rigau, Torres Rigual y Díaz Cruz.

Se halló culpable al apelante en juicio por jurado de los delitos de apropiación ilegal agravada y robo, Arts. 166 y 173 del Código Penal vigente, 33 L.P.R.A. secs. 4272 y 4279. Se le condenó a cumplir de cuatro a diez años de presidio con trabajos forzados en cada causa. El apelante alega que su identificación fue poco confiable y sugestiva, en violación del debido proceso de ley; que erró el tribunal al no impartir a los señores del jurado instrucciones sobre identificación; y que erró igualmente al no instruir al jurado sobre la alternativa de declararle no culpable del delito de apropiación ilegal agravada.

Los hechos fueron los siguientes. El señor Román Figueroa llevó a un amigo al aeropuerto, donde tomó unas cervezas de despedida. De regreso a su casa, alrededor de la una de la mañana se detuvo en un bar. (T.E. pág. 11.) El bar estaba bastante oscuro. (T.E. págs. 22–23.) Dentro había sólo dos parroquianos a quienes Román Figueroa no conocía, y la cantinera. (T.E. págs. 19–21.) Al propio momento de entrar, sin que mediase palabra entre Román Figueroa y los dos individuos presentes allí, según relata la víctima, los hombres lo agreden (T.E. págs. 12, 21, 24–25), lo arrastran

afuera, siguen golpeándolo y le quitan la cartera y las llaves de su automóvil. (T.E. págs. 12–13.) Román no recuerda quién le daba y quién lo aguantaba, pero declaró que desde que empezaron los golpes en el bar hasta que le dejaron tendido en la calle, que estaba alumbrada por un faro, transcurrieron tres o cuatro minutos, lo que le permitió ver bien a sus agresores. (T.E. pág. 28.) Antes había testificado que los observó por quince minutos o quizás más. (T.E. pág. 21.) Una ambulancia recogió al agredido, le tomaron unos puntos en el hospital y se le trasladó a su casa. A las 3:00 A.M. de la misma noche la policía lo lleva al cuartel de Gurabo y allí identifica su carro. Luego le muestran dos personas detenidas en el cuartel, una de las cuales era el apelante, y le preguntan si ellos fueron sus agresores. (T.E. págs. 15–16; 27–29.) El contesta que sí. No había más civiles en el cuartel en dicho momento.

La unica otra prueba de cargo, en adición al testimonio del perjudicado, fue la del detective Víctor Avilés, quien declaró que llegó al cuartel a eso de las ocho de la mañana y poco después sometió el caso; que de conocimiento propio sólo sabía del mismo que vio al perjudicado en el cuartel con un golpe en la nariz, así como una llave con la cual prendía el automóvil estacionado al lado del cuartel. (T.E. págs. 35–36.) No se ofreció prueba sobre cómo y dónde se recuperó el automóvil de la víctima; ni sobre el arresto del apelante. No consta si los detenidos viajaban en el referido automóvil, ni a quienes se les ocuparon las llaves del mismo. El policía Narciso Cruz, sin embargo, ante quien el perjudicado identifica el automóvil y a los presuntos asaltantes (T.E. págs. 16–27), murió antes del juicio. Estaba también en el cuartel al momento de llegar el perjudicado el guardia de retén. (T.E. pág. 27.) Se ignora quiénes más intervinieron en este caso ni el grado de intervención de los mencionados. En la acusación por el delito de apropiación ilegal agravada consta que el fiscal se proponía utilizar a Narciso Cruz como testigo,

en adición a la víctima y a Avilés, pero no en el caso de robo, radicado el mismo día.

Discutiremos conjuntamente los dos primeros planteamientos de error. La defensa solicitó la absolución del apelante a base de que no se le conectó con la posesión del vehículo. El tribunal de instancia denegó correctamente la solicitud. Las lagunas de la prueba de cargo en dicho sentido no impedían al jurado asentar su veredicto sobre la confiabilidad del testimonio del perjudicado respecto a su observación de los asaltantes y a su capacidad de identificarlos.

Denegada su primera solicitud, la defensa, no obstante, atacó vigorosamente ante el tribunal de instancia, como cuestión de derecho, la confiabilidad de la identificación. No hemos vacilado en repetidas ocasiones en revocar condenas en juicios por jurado cuando hemos estimado que las circunstancias del caso específico necesariamente viciaban la identificación. *Pueblo* v. *Delgado Meléndez,* 101 D.P.R. 79 (1973); *Pueblo* v. *Tanco,* 101 D.P.R. 75 (1973). En *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249, 252 (1969), expresamos que "No puede haber un juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un crimen." Consignamos en dicha sentencia pautas, las que reafirmamos aquí, para rodear el proceso de identificación de las salvaguardas necesarias.

La validez de una identificación, sin embargo, debe precisarse a la luz de las circumstancias particulares de cada caso. *Simmons* v. *United States,* 390 U.S. 377, 383 (1968); *Pagán Hernández* v. *Alcaide,* 102 D.P.R. 101, 111 (1974). Hemos sancionado en ocasiones la no utilización del procedimiento de rueda de detenidos cuando hemos estimado que las circunstancias presentes permitían una identificación confiable. *Pueblo* v. *Rivera Vázquez,* 102 D.P.R. 758 (1974); *Pueblo* v. *Gómez Incera,* supra.

La determinación en cuanto a si la prueba de identificación es prima facie suficiente y admisible en evidencia, es

función del juez y no del jurado. *Pagán Hernández* v. *Alcaide*, 102 D.P.R. 101, 103 (1974). La moción para que no se admita en evidencia la identificación del acusado debe hacerse antes del juicio, a menos que concurran circunstancias excepcionales que justifiquen la tardanza. ([1]) Si el juez queda satisfecho de la suficiencia y confiabilidad prima facie de la identificación establecida en la determinación de causa probable y mediante examen de las demás constancias en el expediente, y si necesario fuere, en el sumario fiscal, desestimará de plano la cuestión suscitada por la defensa, admitirá la prueba y procederá al juicio. Queda reservado al acusado el derecho a presentar prueba ante el jurado, en el turno de defensa, para sostener que hubo equivocación o error substancial en la identificación y esa evidencia será tomada en cuenta, junto con el resto de la prueba producida en el juicio, para hacer la determinación fundamental en cuanto a si fue o no el acusado el autor del delito imputado en la acusación.

En el caso de autos se dieron circunstancias que militaban en contra de una determinación por el tribunal sentenciador, como cuestión de derecho, que la identificación estaba viciada fatalmente. El perjudicado no conocía al apelante y lo observó por corto tiempo en medio de una refriega, pero lo vio no solo en la semioscuridad del bar sino también afuera, en una calle alumbrada. Transcurrió muy poco tiempo entre la agresión y la identificación del apelante. Estaba fresca en la mente de la víctima la imagen que pudo haber captado de él. No hubo evidencia directa sobre las circunstancias en que se arrestó al apelante. De haberla habido, se hubiese explicado mejor el método de identificación empleado, pero esto no privó al tribunal, dados los otros aspectos de la prueba des-

---

([1]) Necesariamente ha de ser ésta la regla, porque de cuestionarse la identificación por la defensa y considerarse fundada la objeción por el juez, sencillamente no hay caso alguno que someter para decisión al jurado. No hay necesidad de trasladar al juicio en el comienzo del mismo todo el procedimiento de identificación presentando prueba de esa etapa investigativa.

filada, del derecho que le asistía en este caso específico a permitir que el jurado resolviese las interrogantes existentes sobre la identificación del acusado.

La defensa plantea ante nos, sin embargo, que el tribunal de instancia debió impartir a los señores del jurado instrucciones sobre el asunto de la identificación. En la opinión concurrente emitida en *Pueblo* v. *Montañez Ramos*, 100 D.P.R. 911, 926–927 (1972), en que la defensa solicitó que se instruyese al jurado sobre el extremo de la identificación y el tribunal rehusó, se dijo:

"Para que el jurado hiciera una determinación consciente sobre la credibilidad de la prueba presentada relacionada con la identificación del apelante, el juez debió haberlo instruido adecuadamente sobre este extremo. Procedía instruirle que al jurado incumbía determinar si la identificación había sido establecida más allá de duda razonable; que lo aconsejable es que se presente al sospechoso en unión a otras personas para que el testigo proceda a identificarlo, que en el presente caso no se hizo así, pero que si los jurados entendían que por el hecho del testigo haber declarado que los había visto por la tarde, era innecesaria la confrontación en rueda, a ellos incumbía determinar si la identificación era confiable."

Lo expresado en *Montañez Ramos* representa la doctrina vigente en varios tribunales, cuando existen dudas sobre la confiabilidad de la identificación. *United States* v. *Levy*, 405 F.2d 380, 382–383 (4th Cir. 1968); *United States* v. *Holley*, 502 F.2d 273 (4th Cir. 1974); *United States* v. *Hodges*, 515 F.2d 650 (7th Cir. 1975); *United States* v. *Kimbrough*, 528 F.2d 1242 (7th Cir. 1976); *cf. United States* v. *Sambrano*, 505 F.2d 284, 286 (9th Cir. 1974). En *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972) y en *Kimbrough*, supra, se sugieren también tipos de instrucciones a impartir en estas circunstancias. Si la identificación del acusado es una controversia central al pleito y la defensa solicita instrucciones sobre si dicha identificación es confiable, el tribunal está obligado a darlas.

La instrucción que generalmente recomendamos para su uso en esta jurisdicción es la siguiente, sujeto a los cambios que exijan las circunstancias de cada caso:

Una cuestión importante en este caso es la identificación del acusado como autor del crimen. El Pueblo de Puerto Rico viene obligado a probar esa identidad, más allá de duda razonable. No se requiere que el testigo mismo declare no tener duda respecto a la corrección de su testimonio. No obstante, ustedes, señores del jurado, deben estar satisfechos más allá de duda razonable de la certeza de la identificación del acusado antes de que puedan hallarlo culpable. Si no tienen el convencimiento, libre de duda razonable, de que el acusado fue la persona que cometió el crimen, deberán declararlo inocente.

El testimonio sobre identificación expresa la creencia o impresión del testigo. Su valor depende de la oportunidad que tuvo el testigo para observar al acusado mientras cometía el delito y para hacer después una identificación confiable.

Al considerar la declaración de identificación de un testigo, deberán ustedes tomar en cuenta lo siguiente:

1) ¿Están ustedes convencidos de que el testigo tuvo la capacidad y adecuada oportunidad para observar al acusado?

Si el testigo tuvo o no oportunidad adecuada para observar al ofensor al tiempo de cometer el delito es determinación que está sujeta entre otros factores, a circunstancias como el tiempo corto o relativamente largo de que dispuso; a qué distancia se hallaba del testigo; cuáles eran las condiciones de visibilidad o alumbrado; si el testigo conocía o había visto al acusado en ocasión anterior.

2) ¿Están ustedes convencidos de que la identificación por el testigo después de perpetrado el delito fue producto de su propio recuerdo? Deben tomar en cuenta tanto la fuerza de la identificación como las circunstancias que rodearon la misma.

Si la identificación por el testigo pudo ser influida por las circunstancias en que le presentaron al acusado para que lo identificara, deben ustedes examinar esa identificación con gran cuidado. Pueden ustedes considerar también el tiempo transcurrido desde la ocurrencia del crimen hasta la próxima oportunidad que tuvo el testigo de ver al acusado, como elemento que afecta la confiabilidad de la identificación.

Pueden también considerar que la identificación que se hace señalando al acusado entre un grupo de individuos que se le parecen, generalmente es más confiable que aquélla que se obtiene presentando únicamente al acusado al testigo.

3) Pueden ustedes considerar cualquier ocasión en que el testigo falló en identificar al acusado, o hizo una identificación inconsistente con la que lleva a efecto en el juicio.

4) Finalmente, deben ustedes considerar la credibilidad de un testigo de identificación del mismo modo que la de cualquier otro testigo, considerar si dice la verdad, y si tuvo la capacidad y la oportunidad de hacer una observación de manera confiable de los hechos que narra en su declaración.

Les repito que el Fiscal lleva todo el peso de la prueba para establecer los elementos del delito imputado en la acusación, y esto incluye la obligación de probar más allá de duda razonable la identidad del acusado como autor del crimen por el que se le acusa. Si considerada toda la prueba queda en ustedes una duda razonable respecto a la certeza de la identificación, deberán traer un veredicto de no culpable.

En este caso, sin embargo, la defensa no solicitó dichas instrucciones. Nuestra jurisprudencia establece que si se omite solicitar instrucciones sobre determinado extremo, se renuncia a alegar su omisión como error, *Pueblo* v. *del Valle*, 91 D.P.R. 174, 179 (1964) ; *Pueblo* v. *Negrón*, 79 D.P.R. 296 (1956), a menos que puedan lesionarse derechos básicos del acusado. *Pueblo* v. *Álvarez de Jesús*, 99 D.P.R. 124 (1970). Fuera de la inquietante opinión concurrente del Juez Bazelon en *Telfaire*, no hemos hallado base jurisprudencial que sostenga la posición del apelante de que las instrucciones sobre identificación deben impartirse aun sin solicitarse. La regla general es, de hecho, en sentido contrario. *United States* v. *Pérez*, 431 F.2d 941 (9th Cir. 1970).

En lo que concierne al último planteamiento de error, estimamos que es inmeritorio. Leídas en conjunto, el tribunal de instancia instruyó debidamente al jurado sobre la presunción de inocencia que acompaña a todo acusado y sobre el hecho de que su culpabilidad debe ser probada fuera

de toda duda razonable. El caso presente es distinguible de *Pueblo* v. *Reyes Acevedo*, 100 D.P.R. 703 (1972).

Por las consideraciones expuestas, confirmaría la sentencia apelada.

—O—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué con la cual concurren los Jueces Asociados Señores Dávila y Negrón García.

San Juan, Puerto Rico, a 1ro. de noviembre de 1976

Los hechos ocurridos, tal como se relatan en la opinión del Juez Presidente, son suficientes para viciar de nulidad el procedimiento aquí utilizado para la identificación del apelante. Esa identificación se basó exclusivamente en el testimonio de la víctima, sugerida en el cuartel de la policía, sin las garantías que como normas del debido proceso de ley señalamos en *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969). La sugestividad cobra mayor importancia en este caso si consideramos las circunstancias de la víctima. Se agrava aún más por lo incompleto de la investigación policíaca, y la ausencia total de otros elementos de prueba que pudieran corroborar la identificación, sin que se ofreciera explicación alguna que justifique tal ausencia de prueba.

Respecto a la sugestividad, no creo que pueda negarse. Copiamos de la opinión circulada: "A las 3:00 A.M. de la misma noche la policía lo lleva al cuartel de Gurabo y allí identifica su carro. Luego le muestran dos personas detenidas en el cuartel, una de las cuales era el apelante, y le preguntan si ellos fueron sus agresores. (T.E. págs. 15–16; 27–29.) El contesta que sí. No había más civiles en el cuartel en dicho momento."

No hay explicación alguna en los autos de por qué no se presentó al apelante en rueda de confrontación. No creo que hubiese sido difícil hacerlo. El hecho que no hubiese "más civiles" en el cuartel en aquel momento no puede explicar

satisfactoriamente y excusar la desviación de las normas de *Gómez Incera*. ¿Es que no podía hacerse un esfuerzo por conseguir más personas, entre ellas policías que formaran parte de la rueda de confrontación, vestidos en ropa corriente? ¿Es que no podía esperarse algún tiempo? ¿Qué prisa había? No creo que se justifique aquí apartarnos de la siguiente pauta, establecida en *Bates* v. *United States*, 405 F.2d 1104 (D.C. Cir. 1968) por el hoy Juez Presidente de los Estados Unidos, que citamos con aprobación en *Pagán Hernández* v. *Alcaide*, 102 D.P.R. 101, 106 (1974), opinión del Juez Dávila: "Trabajo policial prudente requiere la limitación de estas identificaciones en el lugar de los hechos a situaciones en que hay que resolver prontamente posibles dudas sobre la identificación; en ausencia de dicha necesidad, la rueda de confrontación convencional es el procedimiento apropiado."

En *Pueblo* v. *Montañez Ramos*, 100 D.P.R. 911, 923–924 (1972), censuramos que la policía, a pesar de estar vigente la norma de *Gómez Incera*, no la siguiese. En *Pueblo* v. *Tanco*, 101 D.P.R. 75 (1973), volvimos a expresarnos sobre la falta de cumplimiento, por parte de la policía, con dicha norma. En *Pueblo* v. *Delgado Meléndez*, 101 D.P.R. 79–80–81 (1973), dejamos ver nuestro disgusto ante la práctica una vez más evidenciada en la investigación policíaca, de ignorarla y no aplicarla, no obtsante que hacía seis meses estaba vigente la norma de *Gómez Incera*. Los hechos del caso de autos ocurrieron cinco años después de adoptada dicha norma. Ante una situación en que no solamente se ignoró la norma sino también se sugirió directamente la identificación, ¿vamos a cruzarnos de brazos? ¿Vamos a permitir que la norma sea anulada por la práctica de no aplicarla?

La víctima había estado tomando cervezas hasta la hora en que ocurren los hechos. Es de presumirse que estaba bajo los efectos de la bebida. Declaró que fue agredido por sus asaltantes "al propio momento de entrar" al bar y sin que mediaran palabras entre ellos. El bar estaba oscuro. No

conocía a sus asaltantes. Ellos lo golpearon, lo arrastraron hacia afuera, siguieron golpeándolo y lo dejaron herido, semi inconsciente, al extremo que fue necesario llevarlo a curar en una ambulancia. Le habían roto el tabique de la nariz, y ello requirió varios puntos de sutura. ¿Es de fiar que bajo esas circunstancias hubiese recuperado su completa lucidez mental dos horas después e identificar, fuera de duda razonable, a dos personas que le fueron sugeridas directamente por la policía como sus asaltantes?

Aparte de la declaración de la víctima no hubo otra prueba que identificara a los dos sospechosos, y al apelante en particular. Siendo la declaración de la víctima sobre la identificación del apelante la única prueba que tuvo ante sí el jurado, y habiendo sido dicha identificación sugerida por la policía en la primera oportunidad, quedó viciada y no podía admitirse ni servir de base para la convicción.

En *Montañez Ramos*, supra, este Tribunal revocó una convicción por asesinato en primer grado, hecha por un jurado, y decretó la absolución del apelante. Se basó en que su identificación por el cantinero de un bar en el que ocurrieron los hechos no se hizo siguiendo la norma de *Gómez Incera*. La prueba en dicho caso estableció que el cantinero vio al apelante en la tarde del día de los hechos, cuando éste estuvo en el bar e inquirió por el occiso: lo volvió a ver por la noche, cuando el apelante hizo los disparos fatales; y, fue gracias a la descripción que dio el cantinero a la policía que el apelante pudo ser detenido luego de ocurrir el crimen. Más aún, su seguridad sobre la identidad del apelante se robusteció al identificarlo al bajarse de un automóvil de la policía, donde estaba en compañía de otras personas. Compárense esos hechos con los del caso ante nos. Aquí no hay prueba de que la víctima describiera a sus asaltantes antes de serles presentados los dos sospechosos, entre ellos el aquí apelante, en el cuartel de la policía. La prueba establece que la víctima entró a un bar oscuro e inmediatamente fue asaltado por dos individuos

que lo golpearon, lo arrastraron a la acera y allí lo siguieron golpeando, le sacaron su cartera de un bolsillo, y lo dejaron tirado en la acera semi inconsciente, y allí permaneció, en ese estado, hasta que una ambulancia lo recogió y lo llevó al hospital. Declaró que todo ocurrió rápido, y que transcurrieron de cinco a diez minutos desde que se inició el incidente hasta que fue recogido por la ambulancia.[1] Nunca había visto a sus asaltantes. En ausencia de más prueba sobre "la totalidad de las circunstancias," de que hablamos en *Gómez Incera,* no veo cómo pueda justificarse en este caso que se prescindiera de la norma allí establecida, a menos que se revoque a *Gómez Incera* y a toda la línea de casos posteriores, incluyendo a *Montañez Ramos.*

Parafraseando al compañero Juez Díaz Cruz en su opinión disidente en *Pueblo* v. *Kravitz,* 105 D.P.R. 158 (1976): "Mi sentido de justicia no me permite anular la libertad del apelante descansando en tan cuestionable evidencia."

Respecto a la instrucción al jurado sobre la identificación del apelante, creo que su omisión constituye fundamento adicional para revocar. La opinión del Juez Presidente concluye que como no se solicitó tal instrucción, se renunció al derecho a apuntarlo como error. Cita como autoridad *Pueblo* v. *Álvarez de Jesús,* 99 D.P.R. 124 (1970); *Pueblo* v. *del Valle,* 91 D.P.R. 174 (1964); y *Pueblo* v. *Negrón,* 79 D.P.R. 296 (1956). Señala, por último, que aparte de la opinión concurrente del Juez Bazelon en *United States* v. *Telfaire,* 469 F.2d 552 (C.A. D.C. 1972), no se ha encontrado base jurisprudencial que sostenga que las instrucciones sobre identificación deben impartirse aunque no se soliciten.

La ausencia de precedentes en la jurisprudencia federal y en los estados no tiene ni puede tener alcance alguno. Como

---

[1] Sabemos que la estimación del tiempo que dura un incidente es en extremo subjetiva. No creo que haya quien discuta que a una persona herida que espera por una ambulancia, y que no está del todo consciente, el tiempo se le figura mucho más largo. En el sabio decir popular, "el que espera se desespera."

dijera el Juez Díaz Cruz en *Ortiz* v. *Levitt & Sons*, 101 D.P.R. 290, 295 (1973), "no tenemos que rebasar nuestras fronteras del Mar de las Antillas en busca de precedentes." No tenemos que esperar a que de afuera nos tracen las pautas de liberalidad. Las garantías a la libertad que nuestro Derecho reconoce no están supeditadas a moldes estrechos de otras jurisdicciones. No hemos vacilado en otras ocasiones, ni debemos vacilar ahora, en ir más lejos en defensa del debido proceso de ley que los tribunales federales o estatales. Para ejemplo, baste citar a *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), en que adoptamos normas respecto del derecho de un acusado a ser informado, en la etapa investigativa, de su derecho a estar asistido de abogado, más allá de lo reconocido por el Tribunal Supremo federal en *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), y que se reconocieron posteriormente en *Miranda* v. *Arizona*, 384 U.S. 436 (1966). *Cf. Soto Ramos* v. *Supert. Granja Penal*, 90 D.P.R. 731, 734 (1964).

En cuanto a la jurisprudencia nuestra, los casos citados en la opinión el Juez Presidente—*Álvarez de Jesús, del Valle* y *Negrón*—no pueden considerarse autoridad para sostener que la omisión de solicitar instrucciones al jurado sobre el procedimiento de identificación impide que la cuestión se plantee ante nos en apelación. Los citados casos se hacen eco de un principio jurisprudencial que ha quedado consagrado en la Regla 137 de Procedimiento Criminal, que en lo aquí pertinente dice:

". . . Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. . . ."

Pero bien claramente se ocupan dichos casos de señalar que cuando se trata de derechos fundamentales el juez de instancia viene obligado a instruir al jurado sobre ello, y que la

omisión de objetar dicha instrucción no implica una renuncia a plantear la cuestión en apelación. *Alvarez de Jesús*, supra, pág. 127; *del Valle*, supra, pág. 179, *Negrón*, supra, págs. 301–302. En el más reciente caso de *Pueblo v. Reyes Acevedo*, 100 D.P.R. 703, 711–714 (1972), pasamos sobre el tecnicismo de la Regla 137 y revocamos una convicción por asesinato porque entendimos que, aunque no se objetó determinada instrucción, la omisión afectó un derecho fundamental.

¿Es el derecho a que se instruya al jurado sobre la validez del procedimiento mediante el cual se identifica al acusado un derecho fundamental? Entendemos que sí. Dijimos en *Gómez Incera*, supra, pág. 251, que: "[la] identificación del acusado es una fase esencial en el procedimiento criminal." Y citamos la trilogía de *Wade, Gilbert y Stovall*,[2] y el más reciente caso de *Foster v. California*, 394 U.S. 440 (1969), al efecto de que ". . . en algunos casos los procedimientos que llevan a una identificación ocular, pueden estar tan viciados que como cuestión de derecho hagan constitucionalmente inadmisible la identificación." *Gómez Incera*, a la pág. 251. Es que, según resolvimos en *Gómez Incera* y hemos reiterado en los casos posteriores que ya hemos citado, cuando se violenta la norma allí establecida se priva al acusado del debido proceso de ley. "No puede haber un juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un crimen." *Gómez Incera*, pág. 252. ¿Hay derecho más fundamental para la protección de la libertad que el derecho de un acusado a que se le garantice un juicio justo e imparcial?

En *Pueblo v. Arcelay Galán*, 102 D.P.R. 409, 415–416 (1974), al revocar a *Pueblo v. Martínez Vega*, 98 D.P.R. 946 (1970), sobre la renuncia implícita al derecho a juicio rápido, dijimos: "Las renuncias a los derechos fundamentales deben ser expresas, no presuntas, así como voluntarias y

---

[2] *United States v. Wade*, 388 U.S. 218 (1967); *Gilbert v. California*, 388 U.S. 263 (1967); y *Stovall v. Denno*, 388 U.S. 293 (1967).

efectuadas con pleno conocimiento de causa." Este principio había sido reconocido en *Pueblo* v. *Morales Romero,* 100 D.P.R. 436 (1972), respecto de la renuncia a juicio por jurado. Hace poco, en la esfera administrativa, reconocimos como fundamental el derecho del Administrador del Fondo del Seguro del Estado a una vista ante la Comisión Industrial y dijimos: "Cuando se trata de derechos fundamentales surge de hecho una presunción contraria a su renuncia." *F.S.E.* v. *Comisión Industrial,* 105 D.P.R. 261 (1976).

Para concluir, no tengo reparo a que se adopten las instrucciones al jurado que en materia de identificación del acusado propone la opinión del Juez Presidente. Su adopción subraya mi contención de que estamos frente a un derecho fundamental del acusado. Debo aclarar, sin embargo, que el adoptar estas instrucciones no debe entenderse como un aflojamiento de la norma establecida en *Gómez Incera.* Dicha norma establece una regla de exclusión en materia de prueba, a saber, que es inadmisible la identificación hecha a base de sugestividad porque ello viola el debido proceso de ley. El tribunal de instancia debe pasar sobre el aspecto de admisibilidad como cuestión de Derecho. Si entiende que como cuestión de Derecho no se ha violado el debido proceso de ley, procede entonces que como cuestión de hecho determine el jurado si el acusado ha sido identificado positivamente como el autor del delito que se le imputa, más allá de duda razonable. Es a tales fines que procedería impartir las instrucciones propuestas en la opinión del Juez Presidente.