El Pueblo de Puerto Rico, demandante y apelado, *v.* Cecilio Rosso Vázquez, acusado y apelante.

*Número:* CR-76-61      *Resuelto:* 14 de abril de 1977

906

*Benigno Alicea Alicea,* abogado del apelante; *Roberto Armstrong, Jr., Procurador General Interino,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Juan José y su esposa Carmen Rosa paseaban a pie en las cercanías de la Piscina Olímpica que está próxima al mar en el área conocida como el Escambrón, en San Juan de Puerto Rico. (¹)

Poco antes de los hechos, los policías Aniceto Ortiz, Luis Ortiz y Humberto Hernández patrullaban aquella área, vestidos de civil y en un vehículo no rotulado. Estando dicho vehículo detenido, el apelante se les acercó y les preguntó si habían visto a su hermano. Los policías antes mencionados conocían al apelante porque éste también era policía, pero no conocían a su hermano. Luego de la breve conversación los policías de la patrulla abandonaron el lugar pero allí se quedó el apelante.

Ya de noche, éste, quien vestía de civil pero estaba armado, se acercó al matrimonio y a punta de revólver los obligó a desnudarse. Bajo amenazas les instó a que tuvieran relaciones sexuales en su presencia, lo cual, obviamente debi-

---

(¹) Los nombres correctos de los perjudicados constan en autos pero hemos optado por usar otros para no causarles más perjuicios de los que ya han sufrido.

do a las inusitadas circunstancias, el marido no pudo llevar a cabo. Entonces el apelante dijo que él tendría relaciones con la mujer y, también mientras los amenazaba con el revólver, la llevó a ella a un lugar más cercano de la playa, donde cometió el delito de violación y también el de contra natura. El marido logró conseguir auxilio y el apelante huyó. Se oyeron unas detonaciones. Aparentemente los disparos los hizo el apelante para amedrentar a sus perseguidores.

Con motivo de las detonaciones alguien dio aviso a la policía, la cual llegó al lugar de los hechos a los pocos minutos. Entre ellos, llegó el vehículo con los policías que antes habían conversado allí con el apelante. Los perjudicados les relataron lo ocurrido y describieron al agresor. Uno de los policías informó al Sargento Ocasio que esa descripción coincidía con la de Cecilio Rosso, el entonces policía y aquí apelante. Concurrieron al lugar varios vehículos de la policía. Al poco tiempo apareció de nuevo el apelante y volvió a preguntar por su hermano. Le pidió al Sargento Ocasio que lo llevara a Puerta de Tierra a lo cual el Sargento accedió. Notó que el apelante estaba nervioso.

El Sargento Correa de la Detective, estuvo a cargo de la identificación del criminal. Se sospechaba del apelante. Correa mostró al matrimonio perjudicado varios álbumes de fotografías para ver si encontraban entre dichas fotos a su agresor. En el proceso de examinarlas Carmen Rosa identificó inmediatamente y sin titubeos la fotografía de su agresor. Dichas fotografías le fueron mostradas separadamente al marido y éste también identificó la del apelante.

El apelante fue arrestado e incluido en una rueda de detenidos con cinco personas adicionales. Juan José y Carmen Rosa identificaron positiva y separadamente al apelante como el autor de los hechos.

El Sargento Correa informó al apelante que él había sido identificado, que podía comunicarse con algún familiar y con su abogado y que podía usar el teléfono. El apelante le in-

terrumpió contestándole que él conocía sus derechos, lo cual era de esperarse pues él era policía y sobre él también pesaba la responsabilidad de informar de dichos derechos a las personas que él arrestase.

La teoría de la defensa consistió en negar los hechos: que fue otra persona y no el apelante el que los cometió.

Luego de oir la prueba de cargo y de defensa el jurado, por votación de 10 a 2, rindió veredicto de culpabilidad en los cargos de violación y contra natura. El tribunal declaró culpable al apelante de una infracción al Art. 32 de la Ley de Armas, 25 L.P.R.A. sec. 442, según acusado.

En apelación el apelante plantea cuatro cuestiones, las cuales podemos resumir como sigue: (1) Que se violó el debido proceso de ley al identificarlo mediante fotografías y mediante una rueda de detenidos "sugestiva"; (2) que se violó su derecho a asistencia de abogado en el proceso de identificación; (3) que no se le hicieron las advertencias necesarias; y (4) que la penalidad impuesta, aunque dentro de los límites establecidos por la ley al momento de cometerse los hechos y al momento de dictarse la sentencia, viola el nuevo y vigente Código Penal.

Los errores señalados no se cometieron. En cuanto al primero, como se sabe, la identificación por fotografías bajo circunstancias que no induzcan a sugestión o que no exijan la utilización de otros métodos es permisible. La validez de la identificación debe determinarse a la luz de las circunstancias particulares de cada caso. *Simmons* v. *United States*, 390 U.S. 377, 383 (1968). El procedimiento de identificación mediante fotografías es sostenido a menos que se trate de una situación tan crasamente sugestiva que dé lugar a una identificación errónea. *Pueblo* v. *Figueroa Torres*, 102 D.P.R. 76, 79 (1974).

A fin de cuentas, lo importante no es el método que se utilice para la identificación del acusado, lo importante es que la identificación sea libre, espontánea y confiable. En el

caso de autos no se presentó ninguna situación difícil de identificación. Los perjudicados estuvieron muy cerca de su agresor, especialmente la mujer ultrajada, por un período de tiempo que pudo haber fluctuado entre 15 minutos y media hora. Además, las características del apelante lo hacían difícil de olvidar y fácil de reconocerlo: estatura de más de seis pies, peso de más de 200 libras y de color moreno. Su identificación libre y espontánea por parte del matrimonio perjudicado fue sumamente confiable. Siendo esto así no era necesario organizar la rueda de detenidos. *Pueblo* v. *Rivera Vázquez,* 102 D.P.R. 758 (1974). Hemos sancionado la no utilización del procedimiento de rueda de detenidos cuando hemos estimado que las circunstancias presentes permitían una identificación confiable. *Pueblo* v. *Toledo Barbosa,* 105 D.P.R. 290 (1976); *Pueblo* v. *Rivera Vázquez,* supra; *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969). Debido a lo anterior no tenemos que discutir si la rueda de detenidos celebrada fue adecuada o no.

◼ En cuanto al segundo planteamiento sobre asistencia de abogado durante el proceso de identificación, la situación es que el derecho de asistencia de abogado no se extiende al examen de fotografías y a las identificaciones así hechas. *Pueblo* v. *Morales Romero,* 100 D.P.R. 436 (1972); *United States* v. *Ash,* 413 U.S. 300 (1973); *United States* v. *Bennett,* 409 F.2d 888 (1969); *McGee* v. *United States,* 402 F.2d 434 (1968).

◼ El tercer planteamiento se refiere a las advertencias. Como vimos, el Sargento Correa le dijo al apelante que se buscase un abogado, que llamase a un familiar y que podía utilizar el teléfono. El apelante le interrumpió diciéndole que él conocía sus derechos y que su abogado y sus familiares estaban allí. Como señalamos, siendo el apelante policía tenemos que presumir que en efecto conocía sus derechos al respecto. Además, conviene señalar que los policías no son profesores de Derecho Penal y que sobre esto de las advertencias lo im

portante y sustancial consiste en que se le informe al arrestado que tiene derecho a no declarar, que puede llamar un abogado y que no está incomunicado puesto que puede utilizar el teléfono. Dadas las circunstancias de este caso en el cual no hubo confesión o admisión alguna por parte del apelante, la cuestión de si hubo o no advertencias o de si éstas fueron o no suficientes, no es determinante. *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765, 776 (1965).

■ En el cuatro y último planteamiento se afirma que, aunque las penalidades impuestas—de 30 a 50 años de presidio por el delito de violación, de 5 a 8 por el de contra natura y de 6 meses por la violación a la Ley de Armas—están dentro de los límites establecidos por la ley al momento de dictarse las sentencias, se violan las disposiciones del nuevo Código Penal. No es correcto el planteamiento. En primer lugar, el apelante admite que las sentencias están dentro de los límites que fijaba el derecho penal vigente al momento de cometerse los delitos y al momento de dictarse dichas sentencias. No hay duda de que el apelante cuestiona la sentencia por el delito de violación. Bajo el Código Penal anterior la penalidad no tenía límite máximo. El Código Penal vigente le fija un límite máximo de 25 años de reclusión. ¿Hace eso mandatorio el que se reduzca la sentencia? No lo hace.

El Art. 4 del vigente Código Penal, 33 L.P.R.A. sec. 3004, dispone que si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará la más benigna. Como hemos visto, al momento de imponerse la sentencia todavía no estaba en vigor el vigente Código Penal.[2]

■ También dispone el Art. 4 en su tercer párrafo, que si durante la condena se aprobare una ley más benigna la

---

[2] El Código Penal vigente comenzó a regir el 22 de enero de 1975, excepto las Secs. 3282 y 3351 a 3392 del Título 33 de L.P.R.A., las cuales entrarán en vigor el 22 de julio de 1977. Código Penal, Art. 284; 33 L.P.R.A. sec. 4628.

misma se limitará a lo establecido "por esa ley." Aunque el artículo no lo dice, presumimos que se refiere a la ley más benigna. Sin embargo, el propio Código Penal vigente dispone en su Art. 282 (33 L.P.R.A. sec. 4626) que las disposiciones del Art. 4 "se aplicarán *solamente* con carácter prospectivo a partir de la fecha de su vigencia." (Bastardillas nuestras.) De manera que a tenor con lo ordenado por el vigente Código Penal en su citado Art. 282 tampoco le es aplicable a este caso el tercer párrafo del Art. 4 del Código ya que la sentencia apelada se dictó antes de la fecha de la vigencia del nuevo Código.

Las circunstancias repugnantes de este caso, añadidas a la de que el agresor venía legal y moralmente obligado a dar un buen ejemplo de conducta cívica por ser agente del orden público, no nos mueven a intervenir con la penalidad que impuso el Magistrado que presidió el juicio.

*Se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Irizarry Yunqué concurre y disiente en parte con voto particular con el cual concurren el Señor Juez Presidente y el Juez Asoicado Señor Martín. El Juez Asociado Señor Negrón García al expresar su conformidad hace constar que reduciría la pena del delito de violación de 15 a 30 años de reclusión.

—O—

Voto concurrente y disidente en parte del Juez Asociado Señor Irizarry Yunqué al cual se une el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 14 de abril de 1977

Convengo con la opinión del Tribunal en que la identificación del apelante se ajustó al debido proceso de ley, en que no se violó su derecho a asistencia de abogado y en que ningún efecto perjudicial tuvo que no se le hicieran las debidas advertencias, toda vez que no se obtuvo admisión ni mucho

menos confesión alguna, aparte de que por ser un policía estatal el apelante conocía sus derechos. Disiento, no obstante, de que se deje intocada la sentencia de 30 a 50 años impuesta al apelante por el delito de violación.

Ciertamente, para la fecha en que el apelante cometió los delitos que se le imputaron y para la fecha en que se dictaron las sentencias apeladas, estaba aún vigente el Código Penal de 1902 que no disponía pena máxima para el delito de violación. El Código que rige desde enero de 1975 fija un mínimo de un año y un máximo de veinticinco años de reclusión para dicho delito.

El Art. 4 del nuevo Código recoge "el axioma de vanguardia penal de la aplicación de la ley penal más benigna, reconocido desde hace tiempo en la legislación penal puertorriqueña." Véanse los comentarios a continuación del citado artículo en la edición del Código publicada por el Departamento de Justicia en 1974. Dice dicho artículo, 33 L.P.R.A. sec. 3004:

"Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.

Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.

Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.

En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho."

La opinión del Tribunal se ampara en el Art. 282 del nuevo Código, 33 L.P.R.A. sec. 4626, para concluir que no debe alterarse la sentencia de 30 a 50 años. El citado artículo dice:

"Las disposiciones de la sec. 3004 de este título se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia."

Aunque esta disposición parece dejar sin efecto, para fines de la aplicabilidad del nuevo Código, el principio general recogido en el Art. 4, ello no nos impide que en casos apropiados demos vigencia a ese principio de esencial justicia. La sentencia que ahora consideramos no es firme. Sus efectos están suspendidos por mandato de la Regla 197(a) de Procedimiento Criminal, que dice:

> "Una apelación ante el Tribunal Supremo, de una sentencia condenatoria, o la presentación de una solicitud de *certiorari* ante dicho Tribunal, suspenderá la ejecución de la sentencia."

El apelante, al cometer los delitos de que fue convicto, actuó sin mostrar un mínimo de compasión para su víctima. Su comportamiento es comparable al de una bestia salvaje que cae sobre su presa, con la diferencia de que la bestia lo hace para satisfacer sus instintos naturales mientras que este hombre lo hizo para satisfacer sus apetitos carnales, deshonrando al hacerlo su honroso uniforme de policía y servidor público.

Pero la sociedad no puede perder la esperanza de que se reforme un criminal, aun el más vil. La pena no debe ser vengativa. Debe ser rehabilitadora. Así se consagra en nuestra Constitución—Art. VI, Sec. 19—y así lo estatuye el Código Penal. 33 L.P.R.A. sec. 3202.

Aquí se impusieron sentencias consecutivas de 5 a 8 años de reclusión por la sodomía cometida, de 30 a 50 años por la violación y 6 meses de cárcel, por Infracción al Art. 32 de la Ley de Armas. Recluir a este hombre por tanto tiempo para "rehabilitarlo" implica a mi entender falta de fe en nuestro sistema correccional y en las potencialidades de bondad que residen en todo corazón humano. Decía Mauriac: "Lo más horrible que hay en el mundo es la justicia separada de la caridad." Y añadía: "No olvidemos nunca al pobre ser que está allí en el banquillo. No olvides, abogado, que puede ser tu hermano, tu padre, tu hijo. No olvides, juez, que 'cuando

al hombre condenes habrás de amar al hombre.' " [1]

Modificaría la pena impuesta en el caso por violación para reducirla a reclusión de 10 a 25 años, y dispondría que se cumplan todas las penas concurrentemente entre sí.

---

[1] "El caso Favre Bulle." Véase Juan Bernardo Iturraspe, *Función social de la abogacía,* ed. Castelví (Argentina), 1967, pág. 74.